Commonwealth ex rel. Howell *v.* Howell,
Appellant.

Argued December 11, 1961; reargued March 21,
1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE,
WATKINS, MONTGOMERY, and FLOOD, JJ.

*Robert N. C. Nix, Jr.,* for appellant.

*Cecil B. Moore,* for appellee.

OPINION BY WRIGHT, J., June 13, 1962:

This is an appeal by Melvin Howell from an order of the County Court of Philadelphia, entered September 21, 1961, requiring him to pay college tuition for his eighteen year old daughter from the proceeds of an insurance policy maintained for that purpose. The case was first argued in December 1961 before six members of this court, who divided evenly. Reargument was heard in March 1962 before the entire court. The narrow issue before us is whether, under the circumstances disclosed by this record, the court below abused its discretion in making the order under consideration.

Appellant is a graduate of the School of Pharmacy of Temple University, and operates a drug store at 18th and Carpenter Streets in the City of Philadelphia. On June 10, 1938, he married Pearl J. Howell, who holds a B. S. degree in secretarial education from Hampton Institute. Their daughter, Pearl Olivia Howell, was born on September 10, 1943. A child's educational endowment policy was issued to appellant by the North Carolina Mutual Life Insurance Company on June 6, 1952, to mature in ten years in principal sum of $1,500.00. Appellant concedes that this policy was designed "to send the child to college". Upon her graduation from Girls High School in June 1961, the daughter expressed a desire to continue her education at Temple Community College. The policy then had a value in excess of $1,000.00, which was available to appellant for this purpose.

It is appellant's contention on this appeal that ownership of this policy, even though coupled with the intention at the time of issuance to use the proceeds therefrom for the daughter's college education, does not "amount to a valid and binding agreement or voluntary offer such as can be enforced by the Court". Appellant takes the position that he has "the sole and exclusive rights under this policy".

From a procedural standpoint, the proceeding had its inception in a petition for support filed by appellant's wife. On January 29, 1960, by agreement of the parties, a temporary order was entered in the sum of $40.00 per week for the support of the wife and daughter. Appellant fell behind in his payments and an attachment was issued. The court below thereupon entered into an investigation for the purpose of fixing a permanent order. Seven hearings ensued, and there is a voluminous record, much of which does not relate to the precise issue before us. As the time approached for the daughter to enter college, the court below scheduled a hearing for September 21, 1961, limited solely to the matter of tuition. At this hearing, counsel for appellant contended "that the father has not the duty to support and maintain a child during the period of college", citing *Commonwealth v. Wingert,* 173 Pa. Superior Ct. 613, 98 A. 2d 203. The hearing judge took the position that the daughter's day to day support was not involved, but ordered appellant to "get the proceeds of that policy or pledge the policy for enough to pay the tuition".

In the *Wingert* case, we stated that "there are no appellate cases in Pennsylvania wherein the facts have been held to justify an order of support for a child attending college". This statement was repeated with approval in *Commonwealth ex rel. Stomel v. Stomel,* 180 Pa. Superior Ct. 573, 119 A. 2d 597. However, in the *Stomel* case, we affirmed an order of support for a son in college, including tuition, because of an agreement by the father to that effect. Similarly, in *Commonwealth ex rel. Grossman v. Grossman,* 188 Pa. Superior Ct. 236, 146 A. 2d 315, we held that an agreement entered into by the father contemplated a college education for his son. Cf. *Wiegand v. Wiegand,* 349 Pa. 517, 37 A. 2d 492. In our most recent decision on the subject, *Commonwealth v. Martin,* 196 Pa. Superior

Ct. 355, 175 A. 2d 138, involving an insurance trust, the law was summarized as follows: "In the absence of an express contract, and unless the circumstances warrant it, a parent is not liable for the support of a child attending college . . . On the other hand, where there is an agreement to support and it is within the contemplation of the parties, a father may be liable to support and furnish his child with a college education.".

It is our view that the instant situation falls within the exception outlined by President Judge Rhodes in the *Martin* case. Although the educational insurance policy may not be an express agreement to support, its existence is clearly a circumstance which warrants the action of the court below. There can be no doubt that a college education was within the contemplation of the parties. We find no abuse of discretion in the direction by Judge Stout that appellant should pay his daughter's tuition "to the extent of the fund created by the insurance".

Order affirmed.

---

DISSENTING OPINION BY ERVIN, J.:

The majority opinion affirms an order made by the court below compelling a father to pay tuition of his daughter's college education.[1] The court below refused to permit counsel for the father to produce testimony as to the child's mental and physical condition and to further show that the child was able to support and maintain herself. We are advised that counsel for the defendant informed the court below of his meager financial circumstances and endeavored to show the court that he was not in a financial position to pay the tuition. We are further advised by counsel for the defend-

---

[1] The exact language of the order of September 21, 1961 was: "Pay tuition for daughter at Temple University today out of Educational policy."

ant that the income of the defendant was $3,500.00 a year or less.

We are handicapped in considering this appeal because evidence was not taken, as it should have been, to show the above mentioned factors and conditions. It is true that the father, sometime prior to the hearing, had expressed an intention to send his daughter to college. He had also taken out a $1,500.00 life insurance policy on the life of his daughter. When the father's counsel asked the question as to what his income was, the following took place: "THE COURT: I'm talking about the tuition. I'll consider income when I make the Order. Now, what about the tuition? Doctor Howell was on notice in July and he indicated he intended to pay the tuition. He made a statement he intended to send her to school, and he's going to send her to school. That tuition will be paid today. MR. NIX: I wish to have a clarification, is this a specific, definite Order? THE COURT: Yes, sir. By MR. NIX: (To daughter) Q. What school is that? A. Temple Community College. THE PETITIONER: $540.00 is due today. THE COURT: He admitted he had intended to provide for her—MR. NIX: May I state something? THE COURT: Certainly. MR. NIX: Doctor Howell had indicated, and he has always stated he wishes his daughter to go. However, there are two factors. No. 1, Doctor Howell's financial situation, which was in a very poor situation at that time, and it has worsened, partially because of these proceedings which have drained what little resources he has. THE COURT: Do you mean Counsel fees? MR. NIX: I mean because of the fact he has been required to come back to Court. Let me also point out to the Court that the cases of which I have indicated, that the mere fact that a father might wish, as has indicated, is not predicating an obligation. THE COURT: I want the tuition paid today. That is the Order. MR. NIX: Will your Honor grant me a supersedeas? THE COURT: No."

In *Com. v. Martin*, 196 Pa. Superior Ct. 355, 358, 175 A. 2d 138, President Judge RHODES said: "In the absence of an express contract, and unless the circumstances warrant it, a parent is not liable for the support of a child attending college. Com. ex rel. Binney v. Binney, 146 Pa. Superior Ct. 374, 380, 22 A. 2d 598; Com. v. Wingert, 173 Pa. Superior Ct. 613, 616, 98 A. 2d 203; Com. ex rel. Stomel v. Stomel, 180 Pa. Superior Ct. 573, 576, 577, 119 A. 2d 597. On the other hand, where there is an agreement to support and it is within the contemplation of the parties, a father may be liable to support and furnish his child with a college education. Com. ex rel. Grossman v. Grossman, 188 Pa. Superior Ct. 236, 239, 146 A. 2d 315."

In the *Martin* case the defendant's former wife testified to an agreement entered into in 1954 at the time of the divorce which provided for a cash payment of $10,000.00 to her and further that defendant would provide a "secondary education, beyond high school" for the two girls. It further appeared that the defendant on July 28, 1954 executed an insurance trust agreement with a trust company relative to an insurance policy on his life. This trust was created solely to provide a fund for the education of the settlor's two daughters. It was stipulated that the insurance policy forming the trust had a cash value of $11,258.65 at the time of the hearing in the court below. The defendant offered no evidence to controvert his former wife's testimony to the effect that he had expressly agreed to provide his daughters with a secondary school education beyond high school. In the *Martin* case we merely held that this evidence supports a finding that defendant voluntarily agreed to provide his daughters with an education beyond high school. The *Martin* case very clearly shows that a binding contract and property settlement agreement between the father and the mother had been entered into by the father and he was undoubtedly

bound by this legal contract. *Com. ex rel. Binney v. Binney,* 146 Pa. Superior Ct. 374, 22 A. 2d 598, is directly in point as to the present case and we think controls it. In that case the father carried life insurance on his own life and the life of his older son with a cash surrender value of approximately $7,000.00. The relatrix, his wife, was named as beneficiary in the policies. The premiums totalled approximately $1,600.00 a year. The father, at the hearing before the court below, stated that it was his intention to keep his son there (in college) as long as he was able to do so. In fact, the father had actually paid the first year's tuition. This case involved tuition for a subsequent year. Notwithstanding this expressed intention by the father, we vacated that portion of the order which provided for the education and maintenance of the appellant's 19-year old son at college. Judge (now President Judge) RHODES said in that opinion, at p. 380: "But it is well known that there are worthy parents in all parts of the country, with means greater than this appellant has, who do not furnish their children with the financial assistance necessary for a college education. We cannot say that each has failed in a legal duty to his child and to the state. To hold that the circumstances of this father *require* him to furnish his son with a college education would be an unwarranted conclusion. Hence in such a matter he is entitled to a measure of discretion, and must be allowed to exercise his own judgment." In that case the testimony revealed that the father was the sole proprietor of a business which produced an annual net income for the year 1940 of $6,684.40. The evidence also showed that the parties owned a home by the entireties that had a rental value of $50.00 per month and that they owned a summer home in Vermont and several lots in Florida. They had joint savings fund accounts totalling $5,000.00 and the relatrix had a separate account of $4,000.00.

In the present case, while the court below did not permit testimony to show the father's present financial condition, we are advised by his counsel that if testimony had been taken it would have shown an income of $3,500.00 or less a year. It may be that we should change the law to require a father of sufficient means to provide a college education for his child or children. This, however, does not appear to be such a case. Furthermore the evidence in the present case does not reveal any legal contract which obligated the father to provide a college education for his daughter. He merely expressed an intention to do so just as was done in the *Binney* case.

There is another serious obstacle which prevents affirmance of the order of the court below. The statute under which these proceedings arise is §733 of the Act of June 24, 1939, P. L. 872, as amended, 18 PS §4733. After making initial provision for issuance of process and service on a defendant, the act in material part provides: "The said court [of quarter sessions], after hearing in a summary proceeding, may order the person against whom complaint has been made or petition filed, *being of sufficient ability,* to pay such sum as said court shall think reasonable and proper for the comfortable support and maintenance of the said . . . children . . . ." (Emphasis added) The court's power to make an order of support is limited by the words *"being of sufficient ability"* (Emphasis added). A father might make a binding contract to give a college education to his child or children but the court below did not have power to make an order requiring him to do so unless the father was of sufficient ability to do so. What Judge (now President Judge) RHODES said in *Com. ex rel. Binney v. Binney,* supra, at p. 380, is especially applicable to the present case: "The Act of June 24, 1939, P. L. 872, 18 P.S. §4733, affords no basis for a court to require appellant, at least under the conditions dis-

closed by the evidence in this case, to send to and main-tain at college his nineteen-year-old son. Com. ex rel. Gillen v. Gillen, 102 Pa. Superior Ct. 136, 138, 156 A. 572."

I would, therefore, reverse the order of the court below because (1) there was no legal contract made by the father to supply his daughter with a college edu-cation and (2) the court below did not permit evidence to show that the father did not have sufficient ability to pay for the college education of his daughter.

---

DISSENTING OPINION BY MONTGOMERY, J.:

I cannot concur in the opinion of the majority be-cause, under either situation, the presence or absence of an agreement to provide a college education to chil-dren, it is imperative that the father's financial ability to provide it be determined. The act[1] under which these proceedings were conducted specifically provides that it is only in cases where the person sought to be charged with an order of support is of *sufficient ability* to pay, that such an order may be made. If this condition ap-plies in cases of statutory liability for support there should be no distinction made and this provision of the act ignored in cases of the voluntary assumption of an obligation for additional educational benefits. The fact that this appellant has a policy of insurance, over which he has full power and in which there is no one else who has any right or interest, does not justify such a distinction being made. There may be many reasons why he is unable to carry out his good inten-tions and is required to use such a policy for other pur-poses. No court has the authority to take that asset from him without first determining if he needs it for himself.

---

[1] Act of June 24, 1939, P. L. 872, §733, as amended, 18 P.S. 4733.

In *Commonwealth v. Martin*, 196 Pa. Superior Ct. 355, 175 A. 2d 138, I joined in the concurring opinion of Judge WOODSIDE which stated that regardless of a contractual promise to provide a college education for his children, such an obligation may fall within the ordinary definition of support "when a father has sufficient estate or income to enable him to send his children to college without undue hardship upon him." Competition in the world today compels children to have more than a high school education if it is possible to secure it. However, in that opinion, emphasis is still placed on the father's ability to provide such additional education.

In the present case, to take this policy or the proceeds thereof, or to compel appellant to borrow on it for the college needs of the daughter, is taking property from him without due process of law unless he is first given a hearing at which he may be privileged to show fully his ability to provide for same.

I dissent and would grant a rehearing in this matter for that purpose.

RHODES, P. J., joins in this opinion.