# WOODDY *v.* WOODDY

[No. 366, September Term, 1969.]

*Decided May 13, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

*Edward J. Skeens* for appellant.

*Robert T. Barbour* for appellee.

SINGLEY, J., delivered the opinion of the Court.

This case is but one of the matters generated by the domestic difficulties of Dr. Arthur O. Wooddy, here the appellee, and Mrs. Louise R. Wooddy, here the appellant. The rift culminated in a bitterly contested divorce suit in 1966 which was concluded by the entry of a decree of divorce a vinculo matrimonii on Dr. Wooddy's cross-bill of complaint. The other sequelae may be found in *Wooddy v. Wooddy*, 256 Md. 440, 261 A. 2d 486 (1970) and in *Wooddy v. Mudd*, 258 Md. 234, 265 A. 2d 458 (1970).

In the 1966 divorce decree, the Circuit Court for Charles County (Dorsey, J.) awarded to Mrs. Woody custody of the Wooddy's children, Clara Louise, now 18 years of age; Arthur Rossiter, now 12, and Edmund Lee (Eddie Lee), now 11, and directed that Dr. Wooddy pay $750 a month to Mrs. Wooddy, accounting from 15 October and

subject to the further order of the court, presumably for the maintenance and support of the three children, because the decree awarded no alimony to Mrs. Wooddy, who had been the unsuccessful cross-defendant in the divorce case. There was a further provision directing "* * * Arthur O. Wooddy to pay in the meantime all tuition charges required for special schooling of the minor child, Edmund L. Wooddy."

In 1960, it had been determined that Eddie Lee was suffering from Down's syndrome (mongolism). At the time of the divorce, he was enrolled at The Benedictine School For Exceptional Children at Ridgely, Maryland, where he remained until June of 1968, when the school recommended that he be transferred to a school for children who were trainable but not educable. In August of 1968, he entered the Van Hook-Walsh School in Middletown, Delaware. In 1966, Clara Louise was attending public school in Charles County. After graduating from La Plata High School in June of 1969, she entered Mary Washington College at Fredericksburg, Virginia.

In December of 1968, Mrs. Wooddy, who had been unsuccessful in her efforts to persuade her former husband to contribute to the expenses which she was bearing for the care of Eddie Lee and was about to incur for the college education of Clara Louise, filed in the Circuit Court for Charles County a petition for the modification of that portion of the 1966 decree which dealt with child support.

The relief which Mrs. Wooddy sought was wide ranging, since she urged:

(i) that Dr. Wooddy be held in contempt for failing to pay Eddie Lee's tuition bill for $338.82, incurred at The Benedictine School's summer camp, and the charges described in (iii) below;

(ii) that Dr. Wooddy be ordered to reimburse Mrs. Wooddy for the $338.82 which she had expended;

(iii) that Dr. Wooddy be ordered to pay Eddie Lee's

tuition and incidental expenses at the Van Hook-Walsh School and to reimburse Mrs. Wooddy for the amounts which she had advanced commencing in August, 1968;

(iv) that Dr. Wooddy be ordered to "provide a college education for Clara Louise Wooddy and Arthur Rossiter Wooddy"; [1]

(v) that Dr. Wooddy be ordered "to reinstate or maintain any life insurance kept on his own life" at the time of the divorce, and that Mrs. Wooddy be irrevocably designated the primary beneficiary of such policies and the children be named contingent beneficiaries; [2]

(vi) that the support provisions of the 1966 decree which provided for monthly payments of $750 be clarified, so that there be paid to each child the sum of $250 per month, in addition to educational expenses;

(vii) that Dr. Wooddy's visitation rights be specified; and

(viii) that a fee be allowed Mrs. Wooddy's counsel.

Dr. Wooddy, in his answer, averred that he had paid Eddie Lee's tuition at The Benedictine School amounting to some $1,000 a year (it was actually about $1,500); that he had refused to pay the charge of $338.82, which was a fee for a summer day camp conducted by the School in 1967, because he regarded it as beyond the scope of the 1966 decree; that he had never been consulted in regard to placing Eddie Lee in the Van Hook-Walsh School; and that the support provisions of the 1966 decree were sufficient to provide a college education for Clara Louise and Arthur Rossiter.

After hearing testimony, the chancellor (again Dorsey, J.) entered an order dismissing Mrs. Wooddy's petition with costs.

---

1. The claim in behalf of Arthur Rossiter was abandoned at the hearing.

2. Mrs. Wooddy withdrew her effort to be designated primary beneficiary.

From this order, Mrs. Wooddy now appeals and assigns as error the court's failure:

(i) to hold Dr. Wooddy in contempt for his refusal to pay tuition charges for Eddie Lee and to enter judgment for arrearages;

(ii) to increase the provision for Clara Louise while she is in college;

(iii) to require Dr. Wooddy to irrevocably designate the three children as beneficiaries of one half of his life insurance; and,

(iv) to award counsel fees to Mrs. Wooddy's attorney.

We shall review each of these contentions, keeping in mind the oft-repeated principle that an order for support and maintenance of children may be varied or modified by the court in the exercise of its sound discretion, Code (1957, 1966 Repl. Vol.) Art. 16, §§ 25, 66; *Seltzer v. Seltzer,* 251 Md. 44, 246 A. 2d 264 (1968); *Bebermeyer v. Bebermeyer,* 241 Md. 72, 215 A. 2d 463 (1965); *Price v. Price,* 232 Md. 379, 194 A. 2d 99 (1963), but that an award of support by a trial court will not be disturbed unless it is clearly erroneous. Rule 886 a, *Pet v. Pet,* 238 Md. 492, 209 A. 2d 572 (1965).

First of all, the issues must be viewed in the light of Dr. Wooddy's financial circumstances. Introduced in evidence were his United States income tax returns for 1967 and 1968. In the earlier divorce case there was evidence that in 1965, his adjusted gross income was $44,252.52 on which he paid a tax of $10,816.94. In 1967, his adjusted gross income was $28,938.91, and the tax was $7,315.35. In 1968, adjusted gross income was $50,768.56 (of which $5,973.36 represented earnings of his second wife) and the tax was $14,593.76. Consequently, his income after federal taxes was $33,435.58, in 1965; $21,623.56, in 1967; and $36,174.80, in 1968, if his wife's earnings are included. In 1967, he was not only paying $9,000 for the support of his children, but about $1,500 for Eddie Lee's tuition, and in 1968, $9,000 for support payments, but perhaps only about $800 for Eddie Lee's tuition. In addi-

tion, there was testimony that Dr. Wooddy paid the taxes and made the mortgage payments on the house occupied by Mrs. Wooddy and the children, although not required to do so by the 1966 decree. There was conflicting testimony as to the value of his assets, but it seems clear that he had about $100,000 of life insurance, against which he had borrowed. Annual premiums were about $6,000.

At first blush, the situation would seem to come within the ambit of *Burton v. Burton*, 253 Md. 233, 252 A. 2d 472 (1969) where we concluded that it was not clearly wrong to require a father with an annual income of $55,-000 and a net worth of $400,000 to pay $700 per month for the support of his three minor children. However, if further evidence is needed that the amount of support payments, like alimony, is determined by the facts and circumstances of each case, *Wagshal v. Wagshal*, 249 Md. 143, 238 A. 2d 903 (1968), *Burton* should be contrasted with *Rothschild v. Strauss*, 257 Md. 396, 263 A. 2d 511 (1970) where we declined to disturb a support order calling for monthly payments of $600 for the maintenance of a 14 year old daughter of a well-to-do father. As Judge McWilliams, speaking for the Court, observed in *Fuld v. Fuld*, 252 Md. 254, 256, 250 A. 2d 93 (1969) :

> "* * * In our judgment no useful purpose will be served by setting forth herein an analytical recitation of the various factual situations presented [by the child support cases] and how we resolved them. * * *"

### (i) Eddie Lee

We think that Dr. Wooddy is quite right in saying that the requirement of the 1966 decree that he pay "all tuition charges required for special schooling" of Eddie Lee did not saddle him with the 1967 camp fee of $338.82. The chancellor concluded, as do we, that this was a responsibility beyond the scope of the original decree, for which Dr. Wooddy could not be held answerable either in a civil action, or in contempt.

We view the problem of Eddie Lee's tuition at the Van

Hook-Walsh School in a somewhat different light, however. At the time of the 1966 decree, Eddie Lee was attending a nine months' program at The Benedictine School and was at home for frequent visits and during vacations, so that a maid had to be employed to assist in caring for him. While the monthly support payment of $750 was not separated, it is not illogical to regard it as separable, at least for these purposes, so that $250 could be regarded as having been intended for Eddie Lee's support at home, while Dr. Wooddy was required to continue to pay the school tuition of about $1,500.

There was testimony that the Van Hook-Walsh School, which Eddie Lee entered in August, 1968, offers a year-round resident program, and that Eddie Lee is only at home for several days every two months. The tuition there is $3,600 of which Maryland's Board of Education pays $800. In the nine months' period August, 1968 through April, 1969, Mrs. Wooddy's payments to Van Hook-Walsh, including tuition at an annual rate of $2,800 and miscellaneous incidentals, totalled $2,483.67, or an average of about $276 per month. If this were put on a yearly basis, Eddie Lee's total expenses at Van Hook-Walsh would appear to be between $3,300 and $3,350 each year. We think that the chancellor must have lost sight of this, and was in error when he failed to require Dr. Wooddy to contribute $30 a month, accounting from 1 August 1968, toward Eddie Lee's school expenses.

Because Mrs. Wooddy twice advised Dr. Wooddy of her intention to enter Eddie Lee at Van Hook-Walsh, and apparently received no reply, we need not reach the question considered in *Fanning v. Warfield*, 252 Md. 18, 248 A. 2d 890 (1969), whether Mrs. Wooddy, who had custody of Eddie Lee, had the right to select a school for Eddie Lee, or whether Dr. Wooddy's consent was required.

### (ii) Clara Louise

Clara Louise entered Mary Washington College in September 1969, six months after the hearing had been had below. Mrs. Wooddy introduced in evidence a "budget"

for Clara Louise's freshman year which totalled $5,283. Of this amount, $700 represented tuition; $708, room and board; $600, "general college fees"; and $220, miscellaneous expenses related to her attendance at college. Of the balance, $1,160 was arbitrarily allocated to clothes ($800) and spending money ($360), expenses which might well have been incurred whether or not she was in college, and may or may not be supportable. A final item of $1,895 was described as "estimated expenses at home for one year for Clara Louise", and apparently represented what Mrs. Wooddy conceived to be Clara Louise's proportionate share of the expense of running the household for the time she would be at home.

Once again, this problem cannot be wholly isolated from the support which Dr. Wooddy is providing for Clara Louise. That a college education is a necessity if the station in life of a child justifies a college education and the father is financially able to pay or contribute to the payment for such education is no longer an open question in Maryland. Compare *Rhoderick v. Rhoderick,* 257 Md. 354, 263 A. 2d 512 (1970), and *Smith v. Smith,* 227 Md. 355, 176 A. 2d 862 (1962), with *Brown v. Brown,* 248 Md. 139, 235 A. 2d 706 (1967). Clara Louise's college-related expenses, which were not challenged, aggregate $2,228, leaving from her support payments something less than $800 for clothes, spending money and living expenses during holidays and a summer vacation of three months or more. Under such circumstances, we are satisfied that the lower court was in error when it failed to direct Dr. Wooddy to pay Clara Louise's tuition of $700 per year, accounting from September, 1969, so long as she is a student at Mary Washington, the fourth and final payment to be made prior to 20 September 1972, when Clara Louise reaches her majority.

### (iii) The Life Insurance Policies

Mrs. Wooddy has referred us to no Maryland case, and we have found none, which would support her argument that Dr. Wooddy can be required to designate his chil-

dren as beneficiaries of certain policies of insurance on his life. The two cases on which she does rely, *Posselt v. Posselt*, 271 Minn. 575, 136 N.W.2d 659 (1965) and *Commonwealth ex rel. Howell v. Howell*, 198 Pa. Super. 396, 181 A. 2d 903 (1962) are not of great help. In *Posselt*, the court, acting under a statute which gave to a divorce court wide power in the disposition of property acquired by the parties during coverture, enforced a husband's agreement to provide a college education for his children by requiring the deposit of $15,000 in securities. In *Howell*, a sharply divided court found that the purchase of a $1,500 educational insurance policy amounted to an agreement by a father to send his daughter to college, which took the case out of the strict Pennsylvania rule that a parent cannot be compelled to pay for his child's college education unless he has agreed to do so.

It cannot be argued that our equity courts in the exercise of their jurisdiction over minors have inherent power to pass such a decree in the absence of statute, and certainly no warrant can be found for it in Code, Art. 16, § 66. Moreover, the idea would be directly contrary to the firmly established principle that responsibility for support ceases with the death of the parent, *Blades v. Szatai*, 151 Md. 644, 135 A. 841, 50 A.L.R. 232 (1927). We have consistently held that courts of equity have no power to adjust property rights, even as between husbands and wives, in the absence of specific statutory authority, *Schwartzman v. Schwartzman*, 204 Md. 125, 134, 102 A. 2d 810 (1954) or a contractual undertaking, *Reichhart v. Brent*, 247 Md. 66, 72, 230 A. 2d 326 (1967) and that equity courts have no greater power in dealing with the custody and maintenance of children. *Blades v. Szatai, supra.* We do not mean to imply that the court, in an appropriate case, would lack the power to sequester the property of an absconding or defaulting father in aid of enforcing a support decree, see *Oles Envelope Corp. v. Oles*, 193 Md. 79, 91, 65 A. 2d 899 (1949).

Alternatively, Mrs. Wooddy would have us impress the life insurance policies with a constructive trust in the

children's favor. But the availability of this remedy is limited to instances where property is acquired by fraud, misrepresentation, duress, or under some other circumstance which makes it inequitable for the person holding title to retain it against another. *Siemiesz v. Amend*, 237 Md. 438, 206 A. 2d 723 (1965); *O'Connor v. Estevez*, 182 Md. 541, 555, 35 A. 2d 148 (1943). In the usual case, the person seeking to subject property to a constructive trust has at some time owned it, or had a valid claim to or against it. Here, the insurance policies were solely Dr. Wooddy's, and the fact that he may at one time have designated the children as beneficiaries or intended the policies to be used for their education does not, standing alone, create rights which may be asserted by the children or in their behalf to require him to keep the policies in force or to prevent him from changing the beneficiary he had designated.

### (iv) Counsel Fees

Code (1957, 1966 Repl. Vol., 1969 Cum. Supp.) Art. 16, § 5A provides:

"In all cases where a person makes an application for a decree or modification of a decree with respect to the custody, the amount of support or visitation rights concerning a child or children of the parties, or files any form of proceeding to recover arrearages of child support or otherwise to enforce such decree, the court, after considering the financial status of both parties, their respective needs and whether there was substantial justification for instituting or defending the proceeding, may make such award of costs and counsel fees to either party as shall be just and proper under all the circumstances."

In view of the conclusions reached in this opinion, we find that there was substantial justification for the filing of Mrs. Wooddy's petition for modification, see *Fuld v. Fuld, supra,* 252 Md. 254, and direct that on remand

an order be entered allowing Mrs. Wooddy's counsel a fee of $200 for his services below and $300 for the prosecution of this appeal, to be paid by Dr. Wooddy.

As we see the case, Mrs. Wooddy's petition should have not been dismissed, and a portion of the relief which she sought should have been granted by modifying the 1966 decree to provide for the payment by Dr. Wooddy of $30 per month toward Eddie Lee's tuition, accounting from 1 August 1968, and continuing so long as he remains at Van Hook-Walsh School; and the payment of $700 per year toward Clara Louise's college expenses, commencing with the academic year which began in September, 1969, and continuing so long as she remains a student at Mary Washington College, the final payment to be made prior to 20 September 1972, all subject to the further order of the court, together with an allowance of the counsel fees discussed in the immediately preceding paragraph.

*Order reversed, case remanded for modification of decree of 19 October 1966 in conformity with this opinion, costs to be paid by appellee.*