659 A.2d 1334

**Stephen Owen EARLY**

v.

**Beverly Ann EARLY.**

**No. 46, Sept. Term, 1994.**

Court of Appeals of Maryland.

June 23, 1995.

---

13. *See supra* note 6.

640

642

Phillip K. Merkle (George E. Burgess & Associates, P.A., on brief), Upper Marlboro, for appellant.

Joseph B. Spillman, Jr., Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

RAKER, Judge.

The principal issue in this case is whether the circuit court, in a contempt proceeding brought by a child support enforcement agency against a father for violation of a Uniform Reciprocal Enforcement of Support Act ("URESA")[1] support order, has the power to terminate the father's ongoing child support obligations and waive arrearages. We shall hold that the trial court lacked authority to modify a URESA child support order when no motion to modify the support order was filed and the mother and child were not given notice and an opportunity to respond.

An attempt by the Prince George's County Office of Child Support Enforcement (the "OCSE") to enforce a 1982 child support order entered in a URESA proceeding eventually generated the issue raised in this appeal. In 1990, the OCSE filed a petition in the Circuit Court for Prince George's County seeking to have Stephen Early, the appellant-father, held in contempt for failing to pay ordered support. In 1993, in the same proceeding, the circuit court entered an order that: (1) terminated the father's ongoing child support obligations; (2) assessed arrearages at zero; and (3) dismissed the contempt proceeding. More than 30 days after entry of that order, on motion by the OCSE, the Honorable Robert J. Woods vacated the enrolled judgment. The father appealed from Judge Woods' order to the Court of Special Appeals, and we issued a writ of certiorari on our own motion before consideration by that court. We shall affirm the circuit court's order vacating the enrolled judgment.

---

1. URESA is the Uniform Reciprocal Enforcement of Support Act, codified in Maryland at Maryland Code (1984, 1991 Repl.Vol., 1994 Cum.Supp.) §§ 10–301 to 10–340 of the Family Law Article ("FL").

## I.

Beverly and Stephen Early were married in Idaho in February 1978 and had one child, Andrew, who was born in February 1979. The mother applied for public assistance; as part of her application, the mother assigned her rights to child support to Idaho's welfare department. *See* 42 U.S.C. § 602(a)(26)(A) (1988); *cf.* Maryland Code (1957, 1991 Repl. Vol.) Art. 88A, § 48(2) (parent required to assign child support rights to state to receive AFDC). In November 1979, the mother and father were granted an absolute divorce, and the Idaho decree ordered the father to pay monthly child support.

In 1980, the State of Idaho IV–D Agency (the Idaho agency that provided child support enforcement services under the federal Aid to Families with Dependent Children program, Part D of Subchapter IV of the Social Security Act, 42 U.S.C. §§ 651–669 (1988 & Supp. V 1993)), as an "obligee," [2] filed a URESA complaint in Idaho. The URESA complaint sought monthly support and arrearages as reimbursement of public assistance paid for the child's benefit.

The complaint was transferred to the Circuit Court for Prince George's County, Maryland, where the father resided.[3]

---

**2.** URESA permits a state or political subdivision to whom reimbursement for public assistance is owed to enforce a child support obligation as an "obligee." FL § 10–301(g) defines "obligee" as "any person to whom a duty of support is owed and includes a state or political subdivision." FL § 10–308 provides:

> Whenever this State or a political subdivision of this State provides support to an obligee, it has the same right to invoke the provisions of this subtitle as the obligee to whom the support was provided for the purpose of securing reimbursement of expenditures made and of obtaining continuing support.

The analogous provision in Idaho's Revised URESA has similar language. *See* Idaho Code § 7–1055 (1990) (repealed 1994). Idaho's current law is the Uniform Interstate Family Support Act. *Id.* §§ 7–1001 to 7–1052 (Supp.1994).

**3.** Both Idaho (the "initiating state") and Maryland (the "responding state") adopted substantially similar versions of URESA. URESA provides that an initiating state may transmit to a responding state a verified complaint for enforcement of a child support obligation. The initiating state court must certify that the complaint alleges facts from

The State's Attorney for Prince George's County represented the Idaho IV–D Agency. *See* FL §§ 10–115, –317(b). On September 28, 1982, the circuit court entered a final order for ongoing child support of $100 per month and for payment of $1,600 in arrearages. The father made fairly regular support payments to the OCSE [4] from 1983 through 1986. His last child support payment was made in August 1986.

On September 11, 1990, the OCSE filed in the URESA action a motion to cite the father for contempt of the 1982 Maryland child support order. The OCSE filed this motion without the mother's knowledge and had, in fact, not been in contact with her since 1984.[5] In the years following the original URESA action, the mother remarried, made several interstate moves, and received public assistance for part of that time. By 1992, she apparently had moved back to Idaho and again was receiving public assistance. Although the trial court made no findings on the amount of arrearages, the OCSE estimated that in November 1993 arrearages were in excess of $20,000, of which approximately $500 would be payable to the mother, with the remainder payable to Idaho as reimbursement for public assistance.

---

which it may be determined that the obligor owes a duty of support, and must forward a copy of the initiating state's version of URESA. *See* FL § 10–313 (duty of initiating state regarding URESA complaint); *id.* § 10–317(a) (responding state's acceptance of URESA complaint).

4. At that time, the relevant agency was the Support Collections Unit of the Circuit Court for Prince George's County, but for simplicity sake, we refer to the OCSE and its predecessor local child support enforcement agency as the "OCSE."

5. We need not decide whether the mother was a plaintiff in the contempt action, as our holding would be the same regardless of her status. Much confusion could have been avoided, however, if the OCSE had clarified the identity of the "plaintiff." The record is clear that the mother never requested representation by the OCSE and was not given notice of this contempt proceeding. The contempt action was filed by an OCSE support officer as plaintiff. Idaho clearly was the plaintiff in the initial complaint (the Chief of the Idaho IV–D Agency signed the complaint and the related affidavit as plaintiff) and in various subsequent enforcement proceedings.

▮▮▮▮▮▮▮▮▮

In May 1992,[6] counsel for the father entered his appearance in the contempt proceeding. A hearing on the motion for contempt was scheduled for August 26. On July 17, the father filed a Motion for Pendente Lite Relief asserting that he believed his son had been adopted. He also filed a motion to have the mother held in contempt for, among other things, failure to inform the appropriate agencies of the alleged adoption. Both motions were served on the OCSE.

The father's Motion for Pendente Lite Relief requested that the OCSE be enjoined from enforcing the child support order until the mother, by deposition or affidavit, clarified the "status" of the adoption. The father did not request modification of the 1982 Maryland child support order in the Motion for Pendente Lite Relief or in any subsequent motion. The OCSE objected to the pendente lite motion, arguing that the father had no proof that an adoption had occurred and that the OCSE was required to enforce the existing support order.

The circuit court (Woods, J.) granted the father's Motion for Pendente Lite Relief on August 10, 1992. The order provided as follows:

UPON CONSIDERATION of Defendant's Motion for *Pendente Lite* Relief, good reasons having been shown therefor, it is this 10th day of August, 1992, by the Circuit Court for Prince George's County, Maryland,

ORDERED, that Defendant's Motion be, and the same is hereby, GRANTED; and it is further

ORDERED, that the Plaintiff appear in the jurisdiction of this Honorable Court to be deposed on the matter of the status of the adoption proceedings in Kings County, California; and it is further

---

6. The 1990 show cause order was sent to the father's last known address. He had moved without notifying the OCSE and did not receive notice of the show cause hearing. When the father failed to appear at the hearing, the court issued a writ of body attachment. In May 1992, the father learned of the outstanding writ. On motion of the father's counsel, the body attachment was withdrawn.

ORDERED, that, in the alternative, the Plaintiff issue a signed and sworn affidavit regarding the matters of the adoption in Kings County, California, and any disposition thereof; and it is further

ORDERED, that until such time as the deposition and/or affidavit is completed and received by the Defendant, the Defendant be relieved of any payments of child support to any child support enforcement agency; and it is further

ORDERED, that the Prince George's County Child Support Enforcement Agency be enjoined temporarily and/or permanently from further attempts to enforce the Idaho court order.

In February 1984, the mother had sent the father (forwarded through the OCSE) a letter inquiring whether he would consent to the adoption of his child by the mother's then current husband. The father responded by letter that he would give his consent. Both the mother's letter and the father's response refer to the fact that a consent form would need to be executed by him. There apparently was no further correspondence between the two parents. No consent form was ever prepared. These two letters were the sole basis for the father's claimed belief that an adoption had occurred. As subsequently revealed by the mother's affidavit, accepted by the court for filing at the hearing on the motion to vacate held on November 29, 1993, the child was not adopted.

On August 26, 1992, the father's counsel served a Request for Admissions of Fact on the OCSE. Request for Admission No. 5 stated: "Andrew Early, son of Stephen Early, was adopted on or about June 1, 1984."

On October 5, 1992, the OCSE requested a protective order excusing its response to the Request for Admissions. The OCSE stated that it had not been in contact with the mother since February 1984 and did not know or need to know her address because "most of the payments were due to the state, since the Plaintiff was receiving public assistance, and therefore were sent to the state and an address for the Plaintiff was unnecessary." The OCSE's motion for a protective order also

requested that the father be directed to serve the Request for Admissions on the mother directly. The father opposed the OCSE's motion, asserting that the requests were deemed admitted under Maryland Rule 2–424 when there was no timely response.

On October 20, 1992, the Honorable William D. Missouri granted a protective order "excusing the response by the Office of Child Support Enforcement to request for admissions." Judge Missouri also denied the father's pending motion to have the mother held in contempt.

Despite the grant of the protective order to the OCSE, and the fact that the Request for Admissions was never personally served on the mother, the father took the position that his requests, not having been timely denied, were now deemed admitted for purposes of the proceeding. On November 12, based on this "admission" of the adoption, the father filed a Motion for Summary Judgment. He also had filed a motion to dismiss in part, asserting a statute of limitations defense to enforcement by contempt of some of the arrearages.

On March 8, 1993, a hearing was held on the outstanding motions before Domestic Relations Master Arnold L. Yochelson. A transcript of that hearing is not part of the record, but the master made written recommendations. On March 19, 1993, in the Circuit Court for Prince George's County, the Honorable William B. Spellbring, Jr., signed the following order [7] (based on the master's recommendations):

A hearing was held before the Master for Domestic Relations Causes on the 8th day of March, 1993. The Master's Recommendations having been considered, it is thereupon this 19th day of March, 1993, by the Circuit Court for Prince George's County, Maryland:

---

7. *See* Maryland Rule 2–514 (court may order production of evidence "necessary for the purpose of justice" and continue hearing or trial to allow compliance with its order).

ORDERED, that this matter be continued and rescheduled for hearing by the Assignment Office; and it is further

ORDERED, that the Motion to Withdraw Appearance filed herein by counsel for the defendant be and the same hereby is withdrawn; and it is further

ORDERED, that the Plaintiff be and she hereby is required to submit an affidavit under oath stating the status of any adoption proceeding filed involving the minor child, Andrew Owen Early, born on February 10, 1979, within sixty (60) days of the date of the aforesaid hearing; and it is further

ORDERED, that, in the event plaintiff fails to do so, ongoing child support be terminated, arrears assessed at zero, and the above-captioned action dismissed.

A hearing was scheduled for June 21, 1993, and notice of the hearing was sent to the OCSE and the father's counsel.

On May 10, 1993, 63 days after the March 8 hearing, the father's counsel submitted a proposed order to the Honorable James Magruder Rea, which Judge Rea signed. That order stated:

Pursuant to an Order of Court dated the 19th day of March, 1993, from this Honorable Court, and in consideration of the fact that the Plaintiff has failed to fulfill the requirement ordered by the Court at that time, it is, this 10th day of May, 1993, by the Circuit Court for Prince George's County, Maryland, hereby,

ORDERED, that the ongoing child support between the parties is hereby terminated; and it is further

ORDERED, that arrearages in this matter be assessed at zero; and it is further

ORDERED, that the above-captioned action be, and is hereby, DISMISSED.

The order was docketed on May 13, 1993.[8]

The OCSE did not learn of the May 13 order until after June 21, 1993, the scheduled hearing date. Thereafter, the OCSE moved to set aside the May 13 order, and the father opposed the motion. On November 29, 1993, a hearing was held before Judge Woods on the motion to vacate. The father's counsel summarized the earlier proceedings and framed the issue as a failure of the OCSE to comply with a discovery order. The following colloquy took place between counsel for the father and the court:

[COUNSEL FOR FATHER]: There was a hearing before Master Yochelson on March 8th on all pending motions. We were going to try to get this resolved finally. We got into the preliminary discussion of discovery and the fact that this requests for admissions had not been answered. At that time Master Yochelson sua sponte had a motion to compel that within sixty days of his recommendation that an answer to the requests for admissions would be filed with the court.

THE COURT: Whether the child is adopted or not?

[COUNSEL FOR FATHER]: Exactly. And additionally sua sponte also had sanctions if the motion to compel was not complied with.

THE COURT: What were the sanctions?

[COUNSEL FOR FATHER]: The sanctions were ongoing arrearages were to be terminated, the arrearage assessed at zero and the case dismissed.

THE COURT: Pretty severe sanctions.

The father's argument focused on the authority of the court to impose the ordered sanctions on the OCSE. The court rejected the father's argument.

[COUNSEL FOR FATHER]: This matter I believe can be narrowed down to something very, very simple. My client

---

8. At the bottom of the May 13 order is a typed notation: "Copies to: Phillip K. Merkle, Esquire [address]" and "Amy Robertson, Esquire [address]."

has a right to discovery. As every attorney we have to comply with the rules and we filed the requests for admissions. The plaintiff didn't provide them. We had a hearing before a master. The master made a recommendation. The judge signed off on it to—in the best light to the plaintiff.

THE COURT: But who are we affecting? We're affecting the child and its right to support. It's the child's right.

Later, Judge Woods announced his ruling:

THE COURT: I'm going to rule on this. I certainly understand your client's position, but I really think I'm affecting the rights of a child that I just can't affect by some discovery order and I think public policy ... dictates that the discovery rules in this case are not applied to that child....

On November 30, 1993, Judge Woods vacated the May 13 and March 19 orders.[9] The father timely appealed from the November 30 order.

## II.

We recently had cause to discuss, at length, the precept "that once a case is decided, it shall remain decided with certain very narrow exceptions." *Tandra S. v. Tyrone W.*, 336 Md. 303, 324, 648 A.2d 439, 449 (1994) (reversing circuit court order that vacated enrolled paternity judgment). Those very narrow exceptions are embodied in Maryland Rule 2–535, which provides in pertinent part:

(a) **Generally.**—On motion of any party filed within 30 days after entry of judgment, the court may exercise revisory power and control over the judgment and, if the action

---

9. The March 19 order was not a final judgment. After Judge Woods vacated the May 13 order, the final judgment in the case, he had the power to vacate the March 19 order under Maryland Rule 2–602. *See Rohrbeck v. Rohrbeck,* 318 Md. 28, 44, 566 A.2d 767, 775 (1989) (until last unresolved claim in action is finally adjudicated, all prior rulings remain interlocutory and subject to revision).

was tried before the court, may take any action that it could have taken under Rule 2–534.

**(b) Fraud, Mistake, Irregularity.**—On motion of any party filed at any time, the court may exercise revisory power and control over the judgment in case of fraud, mistake, or irregularity.

*See also* Maryland Code (1974, 1989 Repl.Vol.) § 6–408 of the Courts and Judicial Proceedings Article.

■ The terms "fraud, mistake, or irregularity" as used in Rule 2–535(b) and its predecessor, Rule 625(a), are narrowly defined and are to be strictly applied. *See Autobahn v. Baltimore*, 321 Md. 558, 562, 583 A.2d 731, 733 (1991).[10]

### A.

■ An "irregularity," as used in Rule 2–535(b), means "the doing or not doing of that, in the conduct of a suit at law, which, conformable to the practice of the court, ought or ought not to be done." *Weitz v. MacKenzie*, 273 Md. 628, 631, 331 A.2d 291, 293 (1975)), *quoted in Tandra S.*, 336 Md. at 318, 648 A.2d at 446. In other words, an "irregularity" is a failure to follow required process or procedure. *See Weitz*, 273 Md. at 631, 331 A.2d at 293.

An example of an "irregularity" is the failure of the clerk to send required notice of a default judgment to the defendant. *Maryland Lumber v. Savoy Constr. Co.*, 286 Md. 98, 405 A.2d 741 (1979); *see also Hardy v. Hardy*, 269 Md. 412, 306 A.2d 244 (1973) (court's grant of waiver of publication of name change petition for infant on motion by mother was "irregularity," even though court had discretion to waive publication on motion showing good cause).

■ The final judgment in this case was the order dismissing the action, entered by the court on May 13, 1993. The OCSE was not given notice that the father's counsel intended

---

10. "Fraud," which is limited to "extrinsic" fraud, *see Tandra S.*, 336 Md. at 315, 648 A.2d at 445, is not at issue in this matter.

to present a proposed order to Judge Rea, and no hearing was held at that time.

Maryland Rule 1–324 requires the clerk to send a copy of any order not made in the course of a hearing or trial to all parties entitled to service.[11] Counsel for the OCSE stated that the OCSE did not receive a copy of the May 13 order until the hearing date, more than 30 days after entry of the order. This statement was undisputed. It appears that the notations on the bottom of the order may have misled the clerk into believing that copies of the order were sent to the parties by the judge, and therefore the clerk failed to send copies of the order to the parties. The May 13 docket entry reads: "Order of Court dated 5–10–93, ongoing support be terminated, arrears $0, Action be dismissed FD (Judge Rea) CC. sent by Court." It appears that when the clerk sent copies of court orders, the docket entry read, "Copies to OCSE & Def. Atty." *See* Record at 70 (3/26/93 docket entry). The requirements of Rule 1–324 were not satisfied because the clerk failed to send a copy of the order to all parties. This failure to follow required procedure was an "irregularity" within the meaning of Rule 2–535(b). We hold that the court properly vacated the May 13 order, in its entirety, based on irregularity.

## B.

We also believe that the circuit court lacked the power to enter a judgment modifying ordered child support in a contempt proceeding.

---

11. Rule 1–324 provides:
   Upon entry on the docket of any order or ruling of the court not made in the course of a hearing or trial, the clerk shall send a copy of the order or ruling to all parties entitled to service under Rule 1–321, unless the record discloses that such service has already been made. This Rule does not apply to show cause orders and does not abrogate the requirement for notice of a summary judgment set forth in Rule 2–501(e).

■ The circuit court has fundamental jurisdiction to determine and enforce child support obligations owed to a nonresident under URESA. Section 10–310 of the Family Law Article provides:

Jurisdiction of all civil enforcement proceedings under this subtitle is vested in the circuit court for any county and juvenile courts having jurisdiction over the enforcement of laws respecting duties of support.

A key purpose of Maryland's URESA "is to provide liberal enforcement in Maryland of the claims of out-of-state welfare departments which have made support payments to nonresident parents and children entitled to support." *Commonwealth of Virginia v. Autry*, 293 Md. 53, 57, 441 A.2d 1056, 1058 (1982).

■ Where Maryland is the responding state in a URESA action, the circuit court determines, applying Maryland law, whether and to what extent a duty of support will be imposed. *See* FL § 10–307; *Autry*, 293 Md. at 59, 441 A.2d at 1059 (law of responding state governs determination of existence and extent of duty of support).

Clearly, in non-URESA cases, the circuit court may exercise continuing subject matter jurisdiction to modify child support orders it enters. Under FL § 1–201(a)(9), "[a]n equity court has jurisdiction over ... support of a child" and therefore may determine whether a duty of support is owed, set the amount of child support, and later modify that ordered support. The court may, in the exercise of its jurisdiction:

(3) decide who shall be charged with the support of the child, pendente lite or permanently;

(4) from time to time, set aside or modify its decree or order concerning the child....

FL § 1–201(b); *see also* FL § 8–103(a) (court may modify any provision of an agreement or settlement with respect to support of a minor child in the best interests of the child); *Wooddy v. Wooddy*, 258 Md. 224, 228, 265 A.2d 467, 470 (1970) (court may modify child support order in exercise of its sound discretion).

■■■ A URESA proceeding is an equitable action. *Commonwealth of Penna. v. Warren*, 204 Md. 467, 105 A.2d 488 (1954). In a URESA action, the circuit court may exercise its general equitable powers to further the purposes of the Act. *See Autry*, 293 Md. at 67–68, 441 A.2d at 1064 (Act must be liberally construed to allow Maryland court to address child's current needs); *see also Abb v. Crossfield*, 23 Md.App. 232, 237, 326 A.2d 234, 238 (1974) (court in URESA action has whatever equitable powers are necessary to effectuate the Act's purpose); *cf.* FL § 10–322 (when Maryland is responding state, court may order support upon finding a duty of support). As we held in *Autry:*

> Ordinarily, a responding state court in a URESA proceeding has the authority to consider child support matters and to enter whatever support orders are proper, notwithstanding any action taken in a prior judicial proceeding. Thus, a responding state court has the authority to issue an independent order fixing an amount of support different from that previously ordered by a court.

293 Md. at 64, 441 A.2d at 1062. The same rationale we followed in *Autry* regarding authority of a Maryland court to enter a URESA order different from that initially entered in another jurisdiction applies to the authority of a Maryland court to modify a URESA child support order initially entered in Maryland. Therefore, the circuit court has basic authority to modify a child support order originally entered by a Maryland court in a URESA proceeding.

■■■ Although the circuit court has the authority to modify a URESA support order, that authority must be invoked by appropriate pleadings. *Carroll County v. Edelmann*, 320 Md. 150, 577 A.2d 14 (1990) (court had no authority to exercise jurisdiction over termination of parental rights on petition by mother, with consent of father, where statutes required either adoption or guardianship proceeding). In *Edelmann*, where the circuit court had fundamental jurisdiction, the remaining question was "under what circumstances the court may appropriately exercise that jurisdiction; is it authorized, by some provision of law or by some inherent authority, to exercise it

*in this kind of case?"* *Id.* at 170, 577 A.2d at 23 (emphasis added); *see also First Federated Com. Tr. v. Comm'r,* 272 Md. 329, 334–35, 322 A.2d 539, 543 (1974) (where circuit court had jurisdiction over the parties, inquiry limited to whether court had authority to consider the subject matter involved, i.e., fundamental jurisdiction, and power to order requested relief, i.e., matters raised in pleadings); *Fooks' Executors v. Ghingher,* 172 Md. 612, 620–24, 192 A. 782, 785–87, *cert. denied,* 302 U.S. 726, 58 S.Ct. 47, 82 L.Ed. 561 (1937).

The only matter raised in the pleadings here was whether the father should be held in contempt for his violation of the 1982 support order. A contempt proceeding, although it may grow out of another proceeding, is ordinarily a collateral or separate action from that underlying proceeding. *Billman v. Maryland Deposit Ins. Fund,* 312 Md. 128, 131, 538 A.2d 1172, 1173 (1988); *Unnamed Atty. v. Attorney Griev. Comm'n,* 303 Md. 473, 483, 494 A.2d 940, 945 (1985). The question of whether the father should have been held in contempt for violation of a child support order was distinct from the question of whether that order should have been modified.

The father never moved for modification of the 1982 support order. Neither did the OCSE. The issue of modification of child support was not before the circuit court, and that court lacked the power to enter the May 13 order terminating support and eradicating the arrearages.

Our conclusion that the circuit court's authority to modify the child support order was not invoked is dictated by FL § 12–104.[12] That statute provides:

### § 12–104. Modification of child support award.

(a) *Prerequisites.*—The court may modify a child support award subsequent to the filing of a motion for modification and upon a showing of a material change of circumstance.

---

**12.** Maryland was required to enact this provision to retain eligibility for federal funds through the AFDC program. *See* 42 U.S.C. § 666(a)(9) (1988).

(b) *Retroactivity of modification.*—The court may not retroactively modify a child support award prior to the date of the filing of the motion for modification.

The prerequisite of "the filing of a motion for modification" was not met in this case. The circuit court had no authority to modify prospective child support or to retroactively modify support in the contempt proceeding.

Prior to the enactment of FL § 12–104, this Court addressed the question of the court's power to modify a child support order absent a motion. In *Woodham v. Woodham,* 235 Md. 356, 201 A.2d 674 (1964), an ex-wife filed a petition to have her ex-husband held in contempt for failure to pay alimony decreed in their Maryland divorce, and the ex-husband petitioned for modification of the ordered alimony. We held that the court erred when it went beyond the relief sought by either party in the pleadings and modified child support.

> We think that the chancellor was in error, however, in increasing the support payments to the child from $20 to $50 sua sponte. Appellant, as custodian for the child, made no request for an increase.... Of course, the support for the girl is subject to modification, but if it is to be increased there must be some formal request for it, supported by evidence of the necessity for modification of that part of the decree.

*Id.* at 361, 201 A.2d at 676–77.

The Court of Special Appeals has applied like reasoning in numerous non-URESA cases. *See, e.g., Terry v. Terry,* 50 Md.App. 53, 435 A.2d 815 (1981) (court erred in decreasing alimony where petition sought decrease in child support; modification not permissible under general prayer for relief); *Flood v. Flood,* 24 Md.App. 395, 330 A.2d 715 (1975) (improper for court to increase child support where wife made no formal request to modify support); *Beshore v. Beshore,* 19 Md.App. 474, 311 A.2d 795 (1973) (on mother's petition to hold father in contempt for violation of support order, court had no authority to reduce amount of child support).

In *Gatuso v. Gatuso,* 16 Md.App. 632, 299 A.2d 113 (1973), the wife petitioned to have her former husband cited for contempt for failure to pay ordered support—17 years after the last proceeding in the matter. The court acted within its discretion in declining to hold the husband in contempt, but lacked power to excuse arrearages or modify current support when the husband had not moved for relief. "[The court] has no authority, discretionary or otherwise, to rule upon a question not raised as an issue by the pleadings, and of which the parties therefore had neither notice nor an opportunity to be heard." *Id.* at 633, 299 A.2d at 114.

Adhering to the requirement of a formal motion for modification is especially important in a URESA proceeding. In *Beshore,* 19 Md.App. at 479, 311 A.2d at 797, the Court of Special Appeals stated, "[T]here is greater reason [than there was in *Woodham*] to require a formal request for modification of a decree where the amount of support payments for infant children are to be decreased or terminated." Similarly, there is great reason to require a formal request where the mother and child are out-of-state and, as in this case, may not even be aware that a proceeding has been initiated.

Other jurisdictions have reached the same conclusion, in both URESA and non-URESA proceedings. In *Dept. of Health Services v. Porbansky,* 569 So.2d 815 (Fla.Dist.Ct.App. 1990), the Florida Department of Health and Rehabilitative Services brought a contempt action against a father for failure to comply with a child support order previously entered by a Florida court in a URESA proceeding. The trial court held the father in contempt but reduced the amount of support from $162.50 per week to $175 per month. The appellate court reversed the part of the order modifying the support obligation because the trial court's subject matter jurisdiction over support issues was never invoked.

This court has held repeatedly that a trial court may not "modify a support order ... *unless the court's subject matter jurisdiction has been properly invoked by appropriate pleadings* and that invoked jurisdiction has been perfected by the proper service of process and due process notice

and an opportunity to be heard on that issue has been had." *Schnicke v. Schnicke*, 533 So.2d 337 (Fla. 5th DCA 1988). This rule does not change just because the enforcement proceeding is brought under Chapter 88 [URESA] rather than Chapter 61. *See* §§ 61.14, 61.17, 88.041, Fla.Stat. (1987). When a payee spouse acts under URESA to enforce collection of support arrearages and no proper request for modification is made by either party, the payee spouse should not be confronted with a new order decreasing the amount of current support.

*Porbansky*, 569 So.2d at 817 (alteration in original) (emphasis added) (citations omitted).

In an Illinois case with many similarities to the matter before us, the mother petitioned the trial court to vacate an order entered 14 months earlier. *Ottwell v. Ottwell*, 167 Ill.App.3d 901, 118 Ill.Dec. 873, 522 N.E.2d 328 (1988). The challenged order suspended the child support ordered in the divorce decree and entered judgment for arrearages of $2,600 (as opposed to the mother's calculation of $12,300 in arrearages). The mother's petition to vacate was denied, and she appealed.

The challenged order was entered in a contempt proceeding brought by the Illinois Department of Public Aid (IDPA), which intervened as assignee of the mother's right to receive child support. The mother was receiving public assistance under the AFDC program. *Id.* 118 Ill.Dec. at 875, 522 N.E.2d at 330.

The mother challenged the trial court's power to modify support when the father had never moved to modify the divorce decree and she was not given notice of the hearing at which ongoing support was suspended and arrearages reduced. Notice of that hearing, and numerous other proceedings, was given only to the IDPA, not to the mother. The appellate court held that the trial court should have vacated the order suspending support and modifying arrearages, as the trial court's subject matter jurisdiction was never properly invoked.

> The only petition pending before the circuit court was a petition for citation filed by the state's attorney on behalf of IDPA in which it was alleged that respondent [father] was in arrears in his child support. Respondent did not file an answer to this petition and he did not file a counter petition requesting the circuit court to reduce or suspend his child support payments.... Without a petition to modify child support on file, the circuit court's subject matter jurisdiction was not invoked, and the orders entered with regard to petitioner's rights to child support were void.

*Id.* 118 Ill.Dec. at 877–78, 522 N.E.2d at 332–33; *see also Lundborg v. Lundborg,* 15 Conn.App. 156, 543 A.2d 783, 785 (1988) ("A trial court cannot on its own initiative modify child support orders."); *Andrulis v. Andrulis,* 26 Ohio App.3d 164, 498 N.E.2d 1380, 1382 (1985) ("Further, absent a motion for modification of support [and visitation], ... the trial court's continuing jurisdiction over visitation and support was not invoked.")

The father here has consistently argued that the circuit court had authority to modify his child support obligations as a sanction against the OCSE for its failure to comply with a discovery order. This argument is without merit. Maryland Rule 2–433(a)(3) provides in pertinent part that the trial court may enter:

> An order striking out pleadings or parts thereof, or staying further proceeding until the discovery is provided, or dismissing the action or any part thereof, or entering a judgment by default that includes a determination as to liability and all *relief sought by the moving party* against the failing party *if the court is satisfied that it has personal jurisdiction over that party.*

(Emphasis added.) While the court had discretion to dismiss the contempt proceeding, the May 13 order went beyond dismissal, affecting matters not raised in the pleadings and affecting rights of persons not before the court.

The duty of support runs to the child, *see* FL § 5–203(b)(1), not to the OCSE or the Idaho IV–D Agency. As Judge

Woods correctly noted at the hearing on the OCSE's motion to vacate, "But who are we affecting? We're affecting the child and its right to support. It's the child's right." He later stated:

> I'm going to rule on this. I certainly understand your client's position, but I really think I'm affecting the rights of a child that I just can't affect by some discovery order and I think public policy . . . dictates that the discovery rules in this case are not applied to that child. . . .

As discussed above, no party sought the "relief" of modification of the 1982 child support order. The court clearly acted beyond its power when it entered an order affecting Andrew's right to support as a sanction for the OCSE's failure to comply with a discovery order. In addition, Maryland Rule 2–433(b) requires that reasonable notice must be given to "all persons affected" by an order granting sanctions for failure to obey an order compelling discovery.

The only matter before the court in this case was a petition by the OCSE to hold the father in contempt for violation of a 1982 Maryland child support order. The father did not petition the court to modify the ordered child support. Instead, the father, through the Motion for Pendente Lite Relief, sought to enjoin enforcement of the existing order until the OCSE obtained proof that the father did *not have a defense* to the contempt petition. Through his Motion for Summary Judgment, the father sought entry of judgment on his behalf in the contempt proceeding, the only matter before the court.

If the father believed his son had been adopted, he should have sought modification of the 1982 support order rather than disregard the court order and unilaterally stop making payments. FL § 12–104 requires filing of a motion for modification before the court may prospectively modify support or retroactively (to the date of filing the motion) modify arrearages. If the father had filed such a motion, and the motion was properly served, the matter of modification would have been before the court. This did not happen. The May 13

order decided matters not placed before the court by the pleadings.

## III.

Both the OCSE and the father discuss at length whether the trial judge could have terminated ongoing child support and waived arrearages based on a finding that the child had been adopted. The simplest answer to this question is that the trial court did not make any such finding. The court's ruling in the May 13 order terminating support and reducing arrearages to zero was treated by all parties as a *sanction* for violation of the March 19 order to provide discovery. The order itself states that the Court acted "in consideration of the fact that the Plaintiff has failed to fulfill the requirement ordered by the Court."

Further, at the hearing on the motion to vacate, counsel for the father emphasized the lack of any finding on the merits of the OCSE's motion for contempt.

[COUNSEL FOR FATHER]: Now, technically speaking an affidavit under oath has not been filed with the Court. Additionally, Your Honor, since it's a discovery issue it is not—we never went to the merits on the adoption. We never—granted, we would have the burden if we did go to [the] merits, but this was a preliminary matter and this fell under the discovery rules.

THE COURT: Uh huh.

[COUNSEL FOR FATHER]: And the Court had the authority to levy sanctions on the plaintiff—

THE COURT: Uh huh.

[COUNSEL FOR FATHER]:—and did so.

THE COURT: Uh huh.

[COUNSEL FOR FATHER]: So, we never even had to go—we never had to prove our case as far as whether the child was adopted or not.

This recitation by the father's counsel accurately reflects that the court did not decide the question of whether the child was adopted.

If, as the father now argues, the trial court had made a finding of adoption in this matter, a judgment based on that finding would have been error. The only "evidence" of adoption was the lack of response to Request for Admission No. 5, which read, "Andrew Early, son of Stephen Early, was adopted on or about June 1, 1984." Rule 2–424(b) states:

> Each matter of which an admission is requested shall be deemed admitted unless, within 30 days after service of the request ... the party to whom the request is directed serves a response signed by the party or the party's attorney.

The Request for Admissions was served only on the OCSE, not on the mother. The OCSE requested a protective order excusing its response to the request and asked the court to direct the father to serve the request directly on the mother. The protective order stated:

> UPON CONSIDERATION of the Office of Child Support Enforcement's motion for a protective order, it is this 20th day of Oct., 1992, by the Circuit Court for Prince George's County, Maryland,
>
> ORDERED, that a protective order be and is hereby issued excusing the response by the Office of Child Support Enforcement to request for admissions.

The father suggests that this order be interpreted as excusing only the OCSE from response, not the mother. The mother had to be served with a request for admissions before the requests could be deemed admitted if not denied by her. Under the circumstances of this case, where a URESA contempt proceeding was initiated by the OCSE without the mother's knowledge, and the OCSE was granted a protective order, service on the OCSE was not adequate service on the mother. The record is clear that all parties and the court knew that the mother had not initiated the proceeding and had not been served with any papers relating to the proceeding.

The OCSE was relieved from responding, and no one else had been served with the Request for Admissions. Therefore, there was no one who was required to respond. Rule 2–424(b) affects only a party who fails to respond "within 30 days after service of the request" on that party. Since the OCSE was excused from responding, and the mother was never served with the request, the request could not be deemed admitted.

## IV.

In addition to showing "fraud, mistake, or irregularity," the party moving to revise an enrolled judgment also must have acted "with ordinary diligence and in good faith upon a meritorious cause of action or defense." *Platt v. Platt,* 302 Md. 9, 13, 485 A.2d 250, 252 (1984); *see also J.T. Masonry v. Oxford,* 314 Md. 498, 505–07, 551 A.2d 869, 872–73 (1989) (clerk's sending notice to attorney's old address may have been "irregularity," but attorney's failure to act until 45 days after actual notice of dismissal was lack of ordinary diligence).

The evidence in the record is sufficient to establish that the OCSE was acting in good faith, with ordinary diligence, and upon a meritorious cause of action. Although Judge Woods failed to make express findings on these matters, the lack of express findings is not fatal. *See Maryland Lumber v. Savoy Constr. Co.,* 286 Md. 98, 103, 405 A.2d 741, 744 (1979) (where record contains sufficient facts to support required findings under Rule 2–535(b), lack of express findings by trial court is immaterial).

At the November 1993 hearing on the motion to vacate, Judge Woods heard from counsel for the OCSE that the mother had been contacted and that she had signed an affidavit that her son had not been adopted. A faxed copy of that affidavit was accepted by the court and filed. The OCSE had a meritorious cause of action. There is no suggestion that the OCSE was acting other than in good faith. The OCSE acted with ordinary diligence in moving to vacate the order.

The enrolled judgment in this case was marred by "irregularity." We hold that Judge Woods properly granted the OCSE's motion to vacate.

RODOWSKY and BELL, JJ., concur in the judgment for the reasons stated in Part II A.

CHASNOW, J., concurs in the judgment for the reasons stated in Parts II A and III.

*ORDER OF CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY VACATING JUDGMENT IS AFFIRMED; CASE REMANDED TO CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLANT.*