HARDY *v.* HARDY, Infant by his mother, Nancy Jane Hogan

[No. 339, September Term, 1972.]

*Decided July 5, 1973.*

The cause was argued before MURPHY, C. J., and McWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Gary Howard Simpson* for appellant.

No brief filed on behalf of appellee.

DIGGES, J., delivered the opinion of the Court.

This is an appeal from the Circuit Court for Dorchester County where Judge Mace, sitting in equity, decreed that the name of a five year old child, James Lucian Hardy, be changed to Lucian Eugene Creighton. The decree was passed under the BH Subtitle of Chapter 1100 of the Maryland Rules [1] on March 30, 1972, the same day the name change petition was filed on behalf of the infant by his mother, Nancy Jane Hogan. Accompanying the petition was a motion seeking a waiver of the normal requirement of Rule BH72 a that there be notice by publication of the applied for change. This motion alleged that:

> "the child for which the change of name is requested is five years of age, has no creditors, no obligations or liabilities, has never used his name for any instrument, and does not have an award of social security, *or any other type of award from any* agency dealing with the public; and she avers that Publication is unnecessary in the instant case."

The chancellor granted this motion, and as mentioned, on the same day, decreed that the name change be allowed. About three and a half months later, on July 18, 1972, James

---

[1]. Maryland Code (1957, 1973 Repl. Vol.), Art. 16, § 123 is also relevant. It provides that: "When the name of a person is changed by a court proceeding, the true and legal name of the person shall be that determined by the order of the court."

Hardy, the natural father of this child who was born out of wedlock, petitioned the court under Rule 625 (Revisory power of Court over Judgment) to strike its order granting the name change so that he might have an opportunity to present relevant information on the merits of the petition. By his motion, the father challenged the truthfulness of certain facts alleged in the petition; averred that it did not state any valid reason for changing the name; complained that he had not received actual notice of the proceeding; and that the notice contemplated by Rule BH72 a to those who might be interested in the matter was improperly waived by the court. He further alleged that once he had learned of the name change he acted with due diligence in moving to strike the decree. Following a hearing on this motion, the request to vacate the decree was denied as the court concluded that:

"So, for those reasons, number one, I don't think Mr. Hardy has any legal standing to oppose this, and number two, that even if he did have legal standing to oppose it, I think in the best interest of the child and for the best welfare of the child that under the circumstances that his name be changed. Consequently, Madam Clerk, [record] that the petition to strike the order in this case be denied."

From that denial, Hardy, appellant, has noted this appeal. Here, he raises several issues of alleged constitutional infirmity in the procedures involved in the conduct of this case which, he claims, require reversal. Appellant argues that the denial of standing to him as the father of this illegitimate child deprived him of the equal protection of the law as well as due process. Additionally, he claims that the failure to require notice, at least by publication, of the pendency of the hearing on the name change also deprived him of due process of law. Under the view we take of this appeal it is unnecessary to consider specifically these constitutional challenges. This is so because we conclude that the chancellor incorrectly permitted the waiver of notice by publication in this case and, with this irregularity, it was error not to grant appellant's motion to strike the

decree allowing the name change. For this reason that action of the chancellor must be reversed and the case remanded for further proceedings.

In the absence of a statute to the contrary, a person may adopt any name by which he wishes to become known, as long as he does so consistently and nonfraudulently. *Stuart v. Board of Elections,* 266 Md. 440, 295 A. 2d 223 (1972); *Romans v. State of Maryland,* 178 Md. 588, 16 A. 2d 642 (1940), *cert. denied,* 312 U. S. 695, 61 S. Ct. 732, 85 L. Ed. 1131 (1941). But, here we point out that the original petition to have Lucian's name changed through legal proceedings was filed by his mother on his behalf. (Rule BH70 b) And, as this petition concerns the name change of a child, it is the duty of the court, as in all matters before it involving minors, to examine what is in the infant's best interests before determining if the requested change is warranted. *West v. Wright,* 263 Md. 297, 299, 283 A. 2d 401 (1971). In making this inquiry, the court should obtain as much information as is reasonably necessary to discharge its responsibility. One possible, important source of knowledge is the relevant information that can be gained from those people who were made aware of the pendency of the petition through the notice of publication normally required by Rule BH72 a. That rule states:

"Order of Publication

a. *Issuance — As of Course.*

   Upon the filing of the petition, the clerk shall issue, as of course, an order of publication unless the court, on motion by the petitioner showing good cause, orders that notice by publication need not be given."

The purpose of requiring publication is to apprise as many people as possible of the pendency of the petition so anyone who reasonably wishes to offer relevant information to aid the court in performing its functions can do so. The motion seeking waiver here was based solely on the fact that this young child has no assets or liabilities, nor has he ever "used his name for any instrument." While these grounds might

form an appropriate basis for waiver of publication in a name change case involving an adult, they do not create a sufficient foundation for waiver on such a petition filed on behalf of an infant by another person under the BH rules. In fact, we find it difficult to imagine a case which has as its purpose the change of an infant's name under the BH rules, as distinguished from other types of name change proceedings, where it would be proper to waive publication. As the court's function here was to determine what is in the best interests of young Lucian, it was improper to waive publication and thereby create a roadblock to possible avenues that could provide useful information on this subject.

This infirmity in the procedures leading to the name change decree was challenged by appellant in his motion to strike. Although this motion was filed more than thirty days after the entry of the decree, and therefore it had become enrolled, Rule 625 a provides that the court shall continue to have revisory power over an enrolled decree "in case of fraud, mistake or irregularity." This Court has defined an "irregularity" as "the doing or not doing of that, in the conduct of a suit at law, which, conformable with the practice of the court, ought or ought not to be done." *Shaw v. Adams*, 263 Md. 294, 283 A. 2d 390 (1971) and cases cited therein. The failure here to provide for notice by publication was the type of "irregularity" contemplated by Rule 625 a. As a result of this, the court's revisory power continued beyond the date when the decree became enrolled. But, as we said in *Shaw:*

> "Once the irregularity is established, the party who moves to set aside an enrolled judgment must also show that he is acting in good faith, with ordinary diligence, and that he has a meritorious defense, . . . so as to satisfy the court in the exercise of a sound discretion that the judgment should be set aside."
> (Citations omitted.) *Id.* at 296.

From the facts before us, we conclude that at the hearing

held on the motion to strike Hardy satisfied these requirements and presented, prima facie, sufficient evidence of a meritorious basis why it was not in the best interests of the child to have his name changed. And this evidence should be considered by the chancellor prior to acting on the name change request. A summation of all the testimony at that hearing on the motion reads like a script for a television soap opera. The evidence shows that Nancy Jane Hogan was born about twenty-nine years ago as Nancy Jane Baldwin. According to her testimony, in 1960, when she was sixteen years old, she married a young man "in order to get away from home primarily. I lived with him for a period of two months, long enough to get to Florida and back. And then, I lived [with and in 1963] married a Mr. Looper. I lived with him for three months. . . . After Mr. Looper . . . I lived in a house with three or four other young people, but living primarily and solely with [one] young man, I did not. Then I met Mr. Hardy." Starting some time in 1965 Nancy Jane and Hardy lived together for eleven months and the child who is the subject of these proceedings was born of this relationship. Hardy testified that before the child was born, because of the circumstances surrounding their relationship and their emotional and financial instability, he urged Nancy Jane to obtain a legal abortion or to permit the child to be adopted. She refused to accept either alternative. Finally, Hardy agreed to permit Nancy Jane to name the child James Lucian Hardy on the condition that she never seek to obtain support payments from him. This condition was accepted and the child was so named. Shortly after the birth of the child, Nancy Jane and Hardy parted company and thereafter the father only saw the child sporadically during the next year or two. By 1970 Nancy Jane had drifted through three more relationships and then she took her third husband, a Mr. Hogan; but this marriage too only lasted a few months. In April 1971 she began living with Eugene Creighton, a man who had recently deserted his own wife and two children. For the last sixteen months before the hearing on this matter, Nancy Jane and Creighton have lived together. They now reside at Fishing Creek, Maryland,

on Hooper's Island and she says it was because of the prominence of the Creighton name in that area and because she wanted her child, who was soon to start school, to have the same last name as the man she loved and was living with that she requested the child's name be changed to Lucian Eugene Creighton. Nancy Jane further testified that she and Creighton hope to get married "when and if his wife ever consents to a divorce" and that "eventually Eugene will be adopting him." At the same hearing on the motion to strike, Hardy said that he was interested in his son as demonstrated by the fact that he had periodically contributed cash, clothes, toys, books and food for the child and in recent years, when the child was at his maternal grandparents' home, he visited him whenever he could. However, he agreed that for the most part, the child has lived with and been supported by his mother. Hardy further testified that he felt that it would be in the child's interest to retain his name as it would provide him "a stable identity in an uncertain future, and it would allow a certain commonality between us, it would allow him to share identity between us."

Bearing in mind that this proceeding is before us only on the denial of the motion to strike, we will vacate the name change decree and remand the case for a hearing on the petition that can be conducted following the proper publication of notice under Rule BH72 a. Our decision here is not based on the merits of the petition; it only goes to the irregularity that preceded the decree. On remand the court may reach the same conclusion, but at least it will be grounded upon evidence gained from any witnesses who, having obtained knowledge of the pendency of the petition through the notice contemplated by Rule BH72 a, have come forward to provide the court with relevant information concerning what is in the best interests of the child.

Under the view we take on this appeal it is unnecessary to consider specifically appellant's constitutional arguments regarding the rights of a father of an illegitimate child. However, we note that the recognition of the rights of illegitimate children and their parents is an area now

receiving considerable judicial attention. *See Stanley v. Illinois,* 405 U. S. 645, 92 S. Ct. 1208, 31 L.Ed.2d 551 (1972). *See also, Weber v. Aetna Casualty & Surety Co.,* 406 U. S. 164, 92 S. Ct. 1400, 31 L.Ed.2d 768 (1972); *Levy v. Louisiana,* 391 U. S. 68, 88 S. Ct. 1509, 20 L.Ed.2d 436 (1968).

> *Order of August 24, 1972 refusing to strike decree of March 30, 1972 reversed; original decree granting the change of name vacated and case remanded for further proceedings in accordance with this opinion.*
> *Costs to be paid by appellee.*