790 A.2d 6

**Joan M. HAGLER**

v.

**Arthur G. BENNETT.**

**No. 52, Sept. Term, 2001.**

Court of Appeals of Maryland.

Feb. 4, 2002.

Leslie S. Auerbach, Camp Springs, for petitioner.

Craig A. Parker (Rosenberg & Parker, LLC, on brief), Bethesda, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

WILNER, Judge.

The issue presented to us is whether an enrolled civil judgment entered against a defendant who was served with process is required to be stricken, over the plaintiff's objection, upon a showing that the defendant was not the person intended to be sued by the plaintiff. In this case, it is not

clear that the defendant served was *not* the person intended to be sued, but even if he was not, the answer is "no."

## BACKGROUND

On October 28, 1992, respondent, Arthur Bennett (Bennett), through a broker lent $54,000 to a corporation known as East Coast Development Company. The loan was evidenced by a promissory note which, in turn, was secured by a deed of trust on certain property in the District of Columbia. Both the note and the deed of trust were executed on behalf of the corporation by "Alfred M. Hagler, President" and "Joan M. Hagler, Secretary." The note contained a joint and several guarantee of payment by "Alfred M. Hagler" and "Joan M. Hagler." It called for a guarantee by Allen Hagler as well, but he never signed the note.

Unbeknownst to Bennett, there were two "Alfred M. Haglers," a father and a son. Both used the same name, without a "Sr." or "Jr." designation. Joan Hagler was the elder Alfred's wife and the younger Alfred's mother. It appears that, at the relevant times, they all lived at the same address, 4015 Terrytown Court in Upper Marlboro. The corporation was owned and operated by the younger Alfred (Alfred *fils* ) and his brother, Allen. Bennett assumed that it was the father (Alfred *pere* ) who was involved, as he said that "I don't lend to children." Bennett did not attend settlement, however, and thus was unaware that it was, in fact, Alfred *fils* who signed the note, both for the corporation and individually as guarantor, and the deed of trust. Bennett was informed that Allen would be unavailable to sign the note and decided to proceed without him.

The corporation defaulted on the loan, whereupon, in July, 1993, Bennett foreclosed on the deed of trust. There being no other bidders at the foreclosure sale, Bennett purchased the property for the principal balance of $54,000. That left a deficiency of $12,166 for interest, costs, and expenses of sale, and, on October 1, 1993, Bennett sued to recover that deficiency. The initial complaint, filed in the District Court in Prince

George's County, named as defendants "Alfred M. Hagler" and Joan M. Hagler and alleged that they had jointly and severally, individually and unconditionally, guaranteed the corporate obligation.[1] The address given for them was 4015 Terrytown Court. Copies of the note and the deed of trust were attached to the complaint. On December 22, 1993, a private process server effected service of the complaint and, we assume, the supporting papers on "Alfred M. Hagler" and Joan Hagler and filed an affidavit to that effect. It is evident from the description recorded by the process server, and is really not disputed, that the service was made on Alfred *pere.* In conformance with Maryland Rule 3–114(b), the writ of summons informed the persons served that, if they contested the claim, they had to file the attached notice of intention to defend within 15 days after service and that, if they failed to do so, judgment by default may be granted.

Neither Alfred nor Joan responded to the complaint. On May 17, 1994—the date set for trial—Bennett appeared in court, filed an affidavit, and was granted a default judgment in the amount of $13,734 against "Alfred M. Hagler" and Joan Hagler.

Nothing, apparently, was done with the judgment until September 22, 1998, when Bennett recorded it in the Circuit Court for Prince George's County. On February 9, 1999, Joan Hagler filed for bankruptcy under Chapter 7 of the Bankruptcy Code and, on May 14, 1999, was granted a discharge. The parties agree that the discharge did not affect the status of the judgment against her. *See* 11 U.S.C. § 523(a)(11) (excepting final judgments from discharge under bankruptcy). On November 19, 1999, Bennett obtained a writ of execution on his judgment against 4015 Terrytown Court—property owned by Alfred *pere* and Joan, as tenants by the entireties. On December 10, Joan Hagler moved to vacate both the writ of execution and the judgment lien itself on the ground that the judgment was against her and her son, Alfred *fils,* that her

---

1. Bennett subsequently amended the complaint to add the corporation and Allen Hagler as defendants, but then dropped Allen as a defendant.

husband, Alfred *pere*, owed no debt to Bennett and was not "a party to this suit," and that, accordingly, the lien could not attach to the property owned by her and Alfred *pere* as tenants by the entireties.

Prior to the hearing on Ms. Hagler's motion, her husband, Alfred *pere*, died, leaving her in sole title of the property, subject to the judgment lien. At the hearing in District Court, it was established that (1) Alfred *fils*, and not his father, actually signed the note and the deed of trust, (2) Bennett did not know that there were two Alfred Haglers and thought he was dealing with Alfred *pere*, (3) Alfred *fils* did not use the limiting designation "Jr." (and no evidence was presented at the hearing that Alfred *pere* used "Sr."), and (4) it was Alfred *pere* who had been served. The court denied the motion on the ground that Alfred *pere* was duly served and was the defendant in the case, that, if he had a defense to the claim, he had the opportunity to raise it, but that he could not wait until judgment was entered and then attempt to raise that defense years later. Joan Hagler appealed to the Circuit Court for Prince George's County which, after concluding that there was no showing of fraud, mistake, or irregularity, held that there was no basis for setting aside the judgment and therefore affirmed.

## DISCUSSION

The heart of Ms. Hagler's argument is the mistaken belief that, because her husband, in her mind, was not the "intended" defendant, he was not, in fact, a party to the underlying suit. She argues that (1) the Circuit Court's conclusion that no fraud, mistake, or irregularity was shown "fails to recognize that a judgment entered against a non party is void, and should be treated as a nullity *whenever* brought to the Court's attention," and (2) in any event, "a judgment entered against one not legally a party to the action has been held to constitute both mistake and irregularity."

We would note, initially, that it is not at all clear that Alfred *pere* was not the intended defendant. As indicated, Bennett

was unaware that there was more than one Alfred M. Hagler. Although he certainly intended to sue the person who guaranteed the note, he believed that person to be Alfred *pere*. Apart from that, however, on the evidence now before us, it would seem equally clear that Alfred *pere* had a good defense on the merits—that he was *not*, in fact, the person who signed the note and had no part in the underlying transaction. Had he, with or without a notice of intention to defend, appeared at trial and presented evidence of his non-involvement, no judgment would likely have been entered against him. At that point, there would have been presented, as an outgrowth of his defense, an issue of mistaken identity that could easily have been corrected. Bennett, having been made aware of the existence of Alfred *fils*, could then have sued him.

Maryland Rule 3–306(b)(2) provides, in relevant part, that, when a defendant fails to file a timely notice of intention to defend, the court may determine liability and damages on the complaint, affidavit, and supporting documents, and that, if the defendant fails to appear in court on the trial date and the court determines that the pleading and documentary evidence are sufficient to entitle the plaintiff to judgment, it may enter judgment on the affidavit. That is precisely what occurred here, and it is clear, therefore, that the judgment against Alfred *pere* was entered in full conformance with the applicable rules.

█ It is true, of course, that, even if the other procedural rules are followed, a court may not enter a valid judgment against a person unless it has acquired personal jurisdiction over that person, which ordinarily is obtained by validly serving the defendant with process. *Lohman v. Lohman,* 331 Md. 113, 125, 626 A.2d 384, 390 (1993); *Chapman v. Kamara,* 356 Md. 426, 438, 739 A.2d 387, 393 (1999); Maryland Code, § 6–102(a) of the Courts and Judicial Proceedings Article. Relying principally on *Brashears v. Collison,* 207 Md. 339, 115 A.2d 289 (1955) and *State Mortgage Corp. v. Traylor,* 120 Tex. 148, 36 S.W.2d 440 (1931), Ms. Hagler contends that the service on her husband was essentially void because he was

not the person intended to be sued and served, and, for that reason, the court never acquired jurisdiction over him. Neither of those cases involved the issue before us and neither supports the proposition urged by Ms. Hagler.

■ Complaints of this kind, that the wrong person was sued, fall into two basic categories—misnomers, which occur when the right person is sued but under the wrong name, and mistaken identities, where the plaintiff is mistaken as to the identity of the proper defendant and actually sues the wrong person. The issue usually surfaces, in either situation, when the plaintiff attempts, after the period of limitations has run, either to change the name of the defendant sued or to bring into the action a new defendant. In either setting, the questions arise of whether (1) in doing so, the plaintiff is actually adding a new party, and (2) if so, it should be allowed. *In that regard*, as pointed out in *Smith v. Gehring*, 64 Md.App. 359, 364, 496 A.2d 317, 320 (1985), "[t]he problem of new defendant versus mere misnomer resolves itself into a question of who was intended to be sued, and whether that party had timely knowledge of the action." *See also Enserch Corp. v. Parker*, 794 S.W.2d 2, 5–6 (Tex.1990). In both situations, there is often a second person either with the same or a similar name as the person sued or who does business under a name similar to that of the person sued, and, ordinarily, it is the rights of that second person that are at issue. *See*, for example, *McSwain v. Tri–State Transportation*, 301 Md. 363, 483 A.2d 43 (1984); *Harford Mutual Insurance Co. v. Woodfin Equities Corp.*, 344 Md. 399, 687 A.2d 652 (1997); *Dart Drug Corp. v. Hechinger Co.*, 272 Md. 15, 320 A.2d 266 (1974); *Abromatis v. Amos*, 127 Md. 394, 96 A. 554 (1916); and *W.U. Tel. Co. v. State, Use Nelson*, 82 Md. 293, 33 A. 763 (1896), all involving misnomers in which we found no error either in allowing the plaintiff to amend a pleading to state the correct name of the defendant sued or treating a judgment entered as being against the intended defendant, and *Hill v. Withers*, 55 Wash.2d 462, 348 P.2d 218 (1960), *Enserch Corp. v. Parker*, *supra*, 794 S.W.2d 2, and *Leonard v. City of Streator*, 113 Ill.App.3d 404, 69 Ill.Dec. 272, 447 N.E.2d 489 (1983), involving

mistaken identities, where the issue was whether the intended defendant—the second one sued—had sufficient connection with and knowledge of the action so as not to be prejudiced by being brought into it after limitations had run.

In resolving whether to allow an amendment to rename the defendant sued or to add another party as a defendant, these cases often speak of who the "intended" defendant was, and Ms. Hagler has latched on to that language as support for her proposition that the action should be treated as against her son, rather than her husband. As noted, however, that language is always in the context of whether the case can proceed against the new defendant or a judgment entered against the redefined defendant is valid. None of them, and no other case that has been cited to us, authorizes a court to strike or ignore an enrolled judgment duly entered against a defendant who has been properly served with process simply on the premise that the person against whom the judgment was entered was not the plaintiff's intended target.

If the issue here was whether Bennett could attach the assets of Alfred *fils* on the existing judgment, we would need to determine whether there was a misnomer or a mistaken identity, but that is not the situation before us. The question is whether an enrolled judgment entered against the person served with process is nugatory because, in someone else's view, he was not the intended defendant. In this context, whether there was a misnomer or a mistaken identity is irrelevant.

The District Court acquired personal jurisdiction over Alfred *pere* when process was served on him. There was no invalidity in either the process or the service of it. His name matched the name on the summons and complaint, and he was served at the address noted. His defense went to the merits—he was not liable because he never signed the note and therefore never assumed the obligation upon which suit was brought. Alfred *pere* had a fair opportunity to raise that defense but neglected to do so, and judgment was entered in accordance with lawful and established procedure. There was

no evidence of fraud, mistake, or irregularity, as those terms have been judicially defined.

To credit Ms. Hagler's argument would wreak havoc on the finality of judgments and the economic institutions that depend on that finality. Judgment debtors could come into court years after the entry of the judgment, perhaps after the plaintiff and knowledgeable witnesses have died, claim that they were not the "intended" defendants, seek to set the judgment aside, and demand a belated trial on what the plaintiff's intent was when the underlying complaint was filed. That, the law does not permit.

JUDGMENT AFFIRMED, WITH COSTS.