806 A.2d 751

**Sheila F. THACKER f/k/a Sheila Thacker Hale**

v.

**Edwin F. HALE, Sr.**

**No. 0532, Sept. Term, 2001.**

Court of Special Appeals of Maryland.

Sept. 5, 2002.

204

Shale D. Stiller (Evelyn W. Pasquier and Piper, Marbury, Rudnick & Wolfe LLP on the brief), Baltimore, for appellant.

Bambi Glenn, Bel Air (Michael S. Libowitz, Margaret L. Argent and Thomas & Libowitz, P.A. on the brief), Baltimore, for appellee.

Argued before SONNER, ADKINS and WILLIAM W. WENNER (Retired, Specially Assigned), JJ.

ADKINS, Judge.

The issue before us is whether a court has revisory power under Md. Rule 2–535(b) to strike a clause allowing a wife to accelerate the balance due on an installment monetary award in the event that the husband misses an installment. The Circuit Court for Baltimore County concluded that Maryland law does not authorize such acceleration, and that the acceleration provision in the 1989 divorce judgment of Sheila F. Thacker, appellant, and Edwin F. Hale, Sr., appellee, was either an "irregularity" subject to revision under Md. Rule 2–535(b), or an unenforceable "nullity."

Thacker challenges the circuit court's order striking the acceleration clause from the judgment, presenting two questions for our review:

I. Did the trial court err in striking the acceleration clause from the judgment on the ground that it was either an "irregularity" or "mistake" within the mean-

ing of Md. Rule 2–535(b), or an unenforceable "nullity"?

II. Did the circuit court err in holding that the acceleration clause in the parties' 1989 divorce judgment was an unenforceable penalty that altered the amount and method of payment of the monetary award in that judgment?

We shall not resolve the second issue, because we conclude that, even if the acceleration clause was an impermissible penalty, the circuit court did not have revisory power to strike it twelve years after the divorce judgment became enrolled.

## FACTS AND LEGAL PROCEEDINGS

On November 17, 1988, the Circuit Court for Baltimore County entered a final judgment dissolving the marriage of Thacker and Hale. The judgment included a $3,932,752 monetary award to Thacker. In paragraph 11(c), the court directed Hale to pay Thacker $3,000,000 of this award

in annual installments of $200,000.00 per year during the first ten years immediately following the date of this Judgment and $100,000.00 per year for the next succeeding ten years, with the first such payment to be made on December 31, 1989 and subsequent payments thereafter to be made on the last day of each and every succeeding year until the $3,000,000.00 balance is paid in full[.]

Under paragraph 11(d), Thacker had the right to accelerate the balance due on the monetary award if Hale failed to make any of the scheduled payments.

In the event of [Hale's] default in making any of the above payments when due on account of this monetary award, at [Thacker's] election, the entire balance outstanding on account of the aforesaid monetary award shall become immediately due and payable by [Hale] to [Thacker][.]

We shall refer to this as the "acceleration clause."

Hale immediately moved to alter or amend the judgment, but his motion did not contest the acceleration clause. The court partially granted that motion, and reduced, *inter alia,*

the total amount of the monetary award. It then revised the terms of Hale's payment obligation as follows:

[P]aragraph (11) of the aforesaid Judgment dated November 17, 1988 is amended to reduce the monetary award granted in favor of [Thacker] to be paid by [Hale] to the sum of $3,657,752.00, said sum to be payable as provided in paragraph (11) of the aforesaid Judgment dated November 17, 1988, with the exception of sub-paragraph (c), which . . . is hereby deleted and substituted in lieu thereof is the following new sub-paragraph (c), namely:

"(c) The $2,725,000.00 balance of the monetary award shall be paid by [Hale] to [Thacker] in annual installments of $136,250.00 per year during the 20 years immediately following the date of this Amendment to Judgment, with the first such payment to be made on December 31, 1989, and subsequent payments thereafter to be made on the last day of each and every next succeeding year until the $2,725,000.00 balance is paid in full[.]"

The court explicitly "ratified and confirmed" all other provisions of the November 17 judgment, including the acceleration clause in paragraph 11(d). The court entered the amended judgment on December 16, 1988.

Thacker then moved to alter or amend the December 16 judgment. She specifically asked the court to enhance her option to accelerate the balance due on the monetary award in the event that Hale's "assets do become liquidated." In doing so, she noted that "[t]he Amendment to Judgment made no provision for accelerated payment except in the event of [Hale's] default in making any [installment] payments [on the monetary award] when due." Hale filed a written opposition to Thacker's motion, arguing that the December 16 amendment "only changed the figures in the payment schedule, not the basic design or character of that schedule, which as ordered by this Court has never called for accelerated payments except in the event of default." The court denied Thacker's motion, explaining that "through the provisions of paragraph (11) of the Judgment and Amendment to Judgment

... specifically including sub-paragraph (d) of paragraph (11), .... the current provisions of the Judgment ... and other available protections of law are sufficient to insure the payment of the monetary award herein made...."

Neither Thacker nor Hale appealed the judgment, which became enrolled thirty days later. We shall refer to this enrolled judgment as the "1989 divorce judgment."

Nearly twelve years later, on November 27, 2000, Thacker filed a motion to accelerate the entire unpaid balance of the monetary award, which she alleged was $1,271,666.45. She asserted that Hale had never made any of the annual payments by the December 31 deadline established in the judgment. Instead, she claimed, Hale made partial payments spread out as late as the May following the December 31 payment date. She set out the exact dates and amounts of Hale's payments on the monetary award. "As to the $136,250 installment that was due on December 31, 1999, Mr. Hale has made two partial payments to date of $45,416.67 each, but has failed and refused to pay the balance[,]" leaving "$45,416.66 in arrears as of the date of [the] [m]otion."

Thacker admitted that she "originally acquiesced in the delayed partial payment procedure early in 1991 in the face of a threat by Mr. Hale that he would declare bankruptcy if she insisted on immediate payment in full of the December 31, 1990 installment." In subsequent years, she continued to acquiesce to such partial payments "as long as [they] were being made within three or four months of their due date." But by November 2000, Thacker alleged, Hale had not yet fully paid the annual installment that was due and payable on December 31, 1999. He purportedly withheld payment "in an apparent attempt to coerce Ms. Thacker into entering into a cash settlement of all of Mr. Hale's payment obligations, including both the alimony award and the monetary award[.]" Thacker found Hale's settlement proposals "unacceptable," and proceeded to "exercise[ ] her election under Paragraph 11(d) ... to declare the entire balance outstanding on account of the monetary award immediately due and payable[.]" She

asked the court to reduce the remaining balance of the monetary award to judgment.

On January 26, 2001, Hale filed an opposition to Thacker's motion to accelerate. For the first time, he argued that "the Maryland Marital Property Act ... does not permit this [c]ourt to 'accelerate' payment on the unpaid balance of a marital award where a court has provided for payment of the award over a period of time and where the balance is not yet due and owing." Citing *McClayton v. McClayton*, 68 Md.App. 615, 515 A.2d 231 (1986), he contended that the court's authority was limited to entering a judgment for any installment payments that were due and owing. Because "[f]uture installments on a monetary award are not 'due and owing,'" the trial court had "exceed[ed] its statutory authority" by including the acceleration clause in the judgment. He maintained that "[s]uch an action" was, " 'if not a total nullity, at least an 'irregularity' within the meaning of Rule 2–535(b).'" *See id.* at 621, 515 A.2d 231.

Hale eventually made all the installment payments due through December 31, 2000.[1] On February 28, 2001, he filed a motion to revise the 1989 divorce judgment, by deleting the acceleration clause.

The circuit court agreed with Hale that the acceleration clause was an unenforceable penalty. In a written opinion, it concluded that Thacker's exercise of the acceleration clause "would retroactively alter both the method and amount of payment of the structured monetary award." Noting that "the **present value** of the $1,090,000 to be paid to her is considerably less than that sum," the court found it "patently inequitable to provide her with such a reward in view of the insubstantial nature of [Hale's] past failures to adhere strictly

---

1. At oral argument, it was unclear whether Hale had made the December 31, 2001 payment. Counsel for Thacker advised this Court, by subsequent correspondence, that no payment had been made as of January 26, 2002. We, of course, make no finding regarding this latest chapter in the parties' long running dispute. That is a matter for the circuit court to address on remand.

to the specified due dates of payments." Accordingly, the court granted Hale's motion to revise the judgment by striking paragraph 11(d).

> Because ... the acceleration clause is not a device permitted by the Family Law Article, it ought not to have been included in the Judgment of Divorce. Accordingly, the [c]ourt also finds it to be an irregularity and thus subject to attack by [Hale] under Rule 2–535, albeit more than 30 days after entry of the Judgment.... Even if this [c]ourt's interpretation of Rule 2–535 is deemed erroneous, the acceleration clause is essentially a nullity....

Thacker now appeals this ruling.

## DISCUSSION

Maryland Code (1984, 1999 Repl.Vol.), section 8–205 of the Family Law Article ("FL") governs the entry of a monetary award.

> (a) *Grant of award.*—Subject to the provisions of subsection (b) of this section, ... the court may ... grant a monetary award ... as an adjustment of the equities and rights of the parties concerning marital property....
>
> (b) *Factors in determining amount and method of payment....*—The court shall determine the amount and the method of payment of a monetary award ... after considering each of [ten enumerated factors, plus] any other factor that the court considers necessary or appropriate to consider in order to arrive at a fair and equitable monetary award....
>
> (c) *Award reduced to judgment.*—The court may reduce to a judgment any monetary award made under this section, to the extent that any part of the award is due and owing.

■ Decisions regarding the method of payment of a monetary award lie within the sound discretion of the trial court. *See Grant v. Zich,* 53 Md.App. 610, 614, 456 A.2d 75 (1983), *aff'd,* 300 Md. 256, 477 A.2d 1163 (1984). But even in matters of discretion, a court must exercise its discretion in accordance with correct legal standards. *See Gallagher v.*

*Gallagher,* 118 Md.App. 567, 576, 703 A.2d 850 (1997), *cert. denied,* 349 Md. 495, 709 A.2d 139 (1998).

 Under section 8–205(b), a court may permit a monetary award to be paid in installments over time. *See Ross v. Ross,* 90 Md.App. 176, 189, 600 A.2d 891, *cert. vacated,* 327 Md. 101, 607 A.2d 933 (1992). The question presented by this case is whether, in conjunction with such an order, and in the exercise of statutory authority to prescribe the amount and terms of payment, the court also may give the obligee spouse an option to accelerate future installment payments in the event that the obligor spouse fails to make an installment.

The circuit court and Hale say no, because such an acceleration clause constitutes an impermissible financial penalty that changes both the amount and method of payment prescribed in the divorce judgment. The circuit court found that "acceleration would ... unjustly reward [Thacker] with a windfall," which Hale figures to be approximately $270,000. Thacker challenges that characterization, arguing that the acceleration clause "was an integral part of the 'method of payment' contemplated by [the court] when [it] entered the divorce decree in 1988[.]" Thacker vigorously asserts that "the only windfall in this case is the one Mr. Hale received when [the original divorce court] allowed him to spread out payment of the monetary award over 20 interest-free annual payments[,]" even though the amount of the award was "painstakingly calculated" based on the value of the marital property at the time of the divorce.

All agree that there is no Maryland precedent regarding the validity of such a "self-executing" acceleration clause. We are asked to provide an authoritative answer to it. We shall not do so, because that answer is not necessary to resolve this appeal. If we assume, without deciding or suggesting, that it was error to include such an acceleration clause in the 1989 divorce judgment, nevertheless, the circuit court reviewing that judgment had no power to revise it twelve years after it was enrolled. We shall hold that the circuit court erred in

striking the acceleration clause from the judgment. Our reasons are many, as set forth below.

## A.

### No Revisory Power Under Rule 2–535(b)

Maryland Rule 2–535 prescribes the circumstances in which a court may revise an enrolled judgment in a civil action. *See Andresen v. Andresen,* 317 Md. 380, 387, 564 A.2d 399 (1989). Derived from common law, Rule 2–535(b) provides that, "[o]n motion of any party filed at any time, the court may exercise revisory power and control over the judgment in case of fraud, mistake, or irregularity."[2]

"[T]he right of the court to revise or vacate [a] judgment [is limited] to the specific grounds set forth in the ... rule." *Id.* "[O]ur cases have rigorously emphasized the finality of judgment" when considering revision requests under Rule 2–535. *Id.* at 387–88, 564 A.2d 399. "The rationale behind strictly limiting a court's revisory power is that in today's highly litigious society, there must be some point in time when a judgment becomes final." *Tandra S. v. Tyrone W.,* 336 Md. 303, 314, 648 A.2d 439 (1994).

Accordingly, after a judgment becomes enrolled, which occurs 30 days after its entry, a court has no authority to revise that judgment unless it determines, in response to a motion under Rule 2–535(b), that the judgment was entered as

---

2. Maryland Code (1974, 1998 Repl.Vol.), section 6–408 of the Courts & Judicial Proceedings Article ("CJ") has substantively identical language.

> For a period of 30 days after the entry of a judgment, or thereafter pursuant to motion filed within that period, the court has revisory power and control over the judgment. After the expiration of that period the court has revisory power and control over the judgment only in case of fraud, mistake, irregularity, or failure of an employee of the court or of the clerk's office to perform a duty required by statute or rule.

For convenience, we shall discuss the revisory powers commonly authorized by common law, Rule 2–535(b), and CJ section 6–408 solely in terms of the Rule. In doing so, we do not ignore that revisory powers of a court have a statutory as well as a judicial provenance.

a result of fraud, mistake, or irregularity. *See id.* The evidence necessary to establish fraud, mistake, or irregularity must be clear and convincing. *See id.* Maryland courts "have narrowly defined and strictly applied the terms fraud, mistake, [and] irregularity," in order to ensure finality of judgments. *See Platt v. Platt,* 302 Md. 9, 13, 485 A.2d 250 (1984). Moreover, the party moving to set aside the enrolled judgment must establish that he or she "act[ed] with ordinary diligence and in good faith upon a meritorious cause of action or defense." *Id.*

The circuit court explicitly relied on our decision and language in *McClayton v. McClayton,* 68 Md.App. 615, 515 A.2d 231 (1986), in determining that the acceleration clause in the 1989 divorce judgment was an "irregularity" that may be stricken under Rule 2–535(b). In *McClayton,* we addressed a different question raised but not answered by the monetary award provisions of FL section 8–205—whether a court may award post-judgment interest on installments of a monetary award that would not be payable until a future date. More than 30 days after it ordered a monetary award payable in installments, the trial court entered a judgment in the full amount of the monetary award, including the installments that were scheduled to be paid in the future. The judgment provided that future installment payments could be made on the originally ordered schedule, but that post-judgment interest would run against each unpaid installment from the due date of the installment.

We held that the trial court erred in entering a judgment for the future installment payments because, under FL section 8–205(c), the court had authority to "reduce to a judgment any monetary award" only "to the extent that any part of the award is due and owing." *See id.* at 621, 515 A.2d 231. Because future installments were not yet due and owing, the court erred in entering judgment on them. *See id.* at 622–24, 515 A.2d 231; *see also Skrabak v. Skrabak,* 108 Md.App. 633, 658, 673 A.2d 732, *cert. denied,* 342 Md. 584, 678 A.2d 1048 (1996)(court may not enter judgment encompassing future installments due on monetary award).

But it is what we did about the improper judgment in *McClayton* that is so relevant to this appeal. We concluded that the court's error in exceeding its statutory authority to reduce future installment payments due on the monetary award to a separate judgment "was, if not a total nullity, at least an 'irregularity' within the meaning of [Md.] Rule 2–535(b)." *McClayton*, 68 Md.App. at 621, 515 A.2d 231. We vacated the enrolled judgment, because the court "had no statutory authority to reduce such a monetary award to a separate judgment." *Id.* at 624, 515 A.2d 231.

In this case, the reviewing court agreed with Hale that *McClayton* provided analogous authority for striking out the acceleration provision of the 1989 divorce judgment. It reasoned that the acceleration clause was an impermissible financial penalty that improperly alters the method and amount of payment of the monetary award. Using the language of *McClayton*, the circuit court granted Hale's motion to strike the acceleration clause from the judgment on alternative grounds that (1) it was "an irregularity and thus subject to attack . . . under Rule 2–535," or, (2) if that "interpretation of Rule 2–535 is deemed erroneous, the acceleration clause is essentially a nullity, as it cannot be enforced without improperly altering the method and amount of payment of the monetary award." This was error, because the court lacked revisory power under either of those rationales.

### 1.

### Not An "Irregularity"

Not surprisingly, Thacker attempts to distinguish *McClayton* by characterizing its "irregularity" language as mere dictum. We are not persuaded that it is dictum, given our mandate to vacate the disputed portion of the judgment. Nor do we find the interpretation of *McClayton* espoused by the circuit court and Hale to be an inaccurate or unfair reading of that case. Thus, we acknowledge that both our language and our decision in *McClayton* might be understood to support the proposition that a trial court's erroneous inclusion of an imper-

missible term relating to a monetary award may be an "irregularity" that can be stricken under Rule 2–535(b).

As an alternative to her "dictum" argument, Thacker calls into question the precedential value of *McClayton*. This challenge has more merit. To the extent that *McClayton* may be construed to stand for the proposition that the erroneous inclusion of an impermissible term in the monetary award provisions of a divorce judgment is an "irregularity," we conclude that it is wrong. We agree with Thacker that, to the extent that *McClayton* stands for that proposition, it is "in direct conflict with the myriad cases that were decided before and after that opinion by both the Court of Appeals and this Court." We explain.

"When determining whether an irregularity occurred, a trial court must consider the totality of the circumstances. From an appellate standpoint, we review the decision of the trial court for an abuse of discretion." *Gruss v. Gruss*, 123 Md.App. 311, 320, 718 A.2d 622 (1998).

"Irregularity" has a narrow judicial definition in Rule 2–535(b) jurisprudence. *See Early v. Early*, 338 Md. 639, 652, 659 A.2d 1334 (1995). It means "a failure to follow required process or procedure." *Id.*

Under our cases, an irregularity which will permit a court to exercise revisory powers over an enrolled judgment has been consistently defined as the doing or not doing of that, in the conduct of a suit at law, which, conformable to the practice of the court, ought or ought not to be done[.] As a consequence, irregularity, in the contemplation of the Rule, usually means irregularity of process or procedure, and not an error, which in legal parlance, generally connotes a departure from truth or accuracy of which a defendant had notice and could have challenged.

*Weitz v. MacKenzie*, 273 Md. 628, 631, 331 A.2d 291 (1975) (citations omitted). Irregularities warranting the exercise of revisory powers most often involve a judgment that resulted from a failure of process or procedure by the clerk of a court, including, for example, failures to send notice of a default

judgment, to send notice of an order dismissing an action, to mail a notice to the proper address, and to provide for required publication. *See Early,* 338 Md. at 652, 659 A.2d 1334; *Hardy v. Hardy,* 269 Md. 412, 416, 306 A.2d 244 (1973); *Gruss,* 123 Md.App. at 320, 718 A.2d 622.

Applying this narrow concept of "irregularity," the Court of Appeals consistently has rejected attempts to exercise revisory power over judgments that have been called into question on their merits, rather than on the basis of questionable procedural provenance. The Court has refused to characterize challenges to the substance of judgments that were obtained through appropriate procedures as "irregularities." In *Weitz,* 273 Md. at 631, 331 A.2d 291, the Court reversed an order setting aside a confessed judgment against a guarantor who established that the note was ambiguous as to which obligations were being guaranteed. In *Autobahn Motors, Inc. v. City of Baltimore,* 321 Md. 558, 563, 583 A.2d 731 (1991), the Court reversed an order revising a judgment of condemnation in order to correct the city's erroneous measurements. Indeed, in the Court of Appeals' most recent Rule 2–535(b) decision, issued after oral argument in this case, we see further support for such a narrow construction of "irregularity."

In *Hagler v. Bennett,* 367 Md. 556, 790 A.2d 6 (2002), a mother sought relief from a default judgment entered years earlier. The judgment creditor had sued to obtain repayment of a business loan to the Haglers' two sons. The note was signed by the two sons and the mother, but the creditor mistakenly believed that one of the signatories was the father, who shared the name of one son. It sued the other son, the mother, and the father. When they did not answer the complaint, the creditor obtained a default judgment against all three, filed a lien against the parents' home, and later sought to execute on the home.

The Court of Appeals affirmed the trial court's denial of the mother's motion to vacate the judgment. *See id.* at 564, 790 A.2d 6. Rejecting the mother's argument that " 'a judgment

entered against a non party is void, and should be treated as a nullity *whenever* brought to the Court's attention,' " the Court held that there was no reason to disturb the enrolled judgment.

> The District Court acquired personal jurisdiction over [the father] when process was served on him. There was no invalidity in either the process or the service of it. His name matched the name on the summons and complaint, and he was served at the address noted. His defense went to the merits—he was not liable because he never signed the note and therefore never assumed the obligation upon which suit was brought. [The father] had a fair opportunity to raise that defense but neglected to do so, and judgment was entered in accordance with lawful and established procedure. There was no evidence of fraud, mistake, or irregularity, as those terms have been judicially defined.

*Id.* at 563–64, 790 A.2d 6.

Similarly, this Court has declined invitations to expand the definition of "irregularity." In *Das v. Das*, 133 Md.App. 1, 24, 754 A.2d 441, *cert. denied*, 361 Md. 232, 760 A.2d 1106 (2000), we recently held that a trial court correctly refused to set aside an order, entered without a hearing, striking a husband's divorce attorney, because there was no error in process or procedure. In *Home Indemn. Co. v. Killian*, 94 Md.App. 205, 217, 616 A.2d 906 (1992), *cert. granted*, 330 Md. 458, 624 A.2d 954 (1993),[3] we held that the circuit court's entry of judgment in accordance with this Court's mandate, which was issued in error, was not an irregularity justifying revision.

▇▇▇ The common teaching of these cases is that if the judgment under attack was entered in conformity with the practice and procedures commonly used by the court that entered it, there is no irregularity justifying the exercise of revisory powers under Rule 2–535(b). *See, e.g., id.* ("When the judgments at issue here were entered, their entry was

---

**3.** A consent order vacating the circuit court's judgment and mooting the appeal to the Court of Appeals was entered on July 27, 1994.

entirely conformable with the practice of the court that entered them"). Applying this teaching here, we conclude that the arguably erroneous inclusion of an acceleration clause in an enrolled judgment providing for a monetary award is not an irregularity within the meaning of Rule 2–535(b). Notwithstanding *McClayton*,[4] this error cannot be properly characterized as a failure to follow a prescribed or customary judicial practice or procedure. Because the acceleration clause did not result from any error in process or procedure, the circuit court erred in concluding that it was an "irregularity" that could be excised from the 1989 divorce judgment under Rule 2–535(b).

## 2.

### No "Jurisdictional Error" Or "Mistake"

Alternatively, Hale argues that the acceleration clause was properly stricken from the 1989 divorce judgment because the 1988 trial court lacked subject matter jurisdiction to include the acceleration provision in the judgment. In support, he cites *Spencer v. Franks*, 173 Md. 73, 195 A. 306 (1937). In that case, the Court of Appeals struck out a provision of a four year old adoption decree reserving visitation rights to the natural parents. *See id.* at 86, 195 A. 306. The Court concluded that the clause was void because the adoption court had no jurisdiction to order such visitation.

The court must stay within the limit of its jurisdiction and powers. The correction of wrong decisions, when made within the scope of the court's authority, is on appeal or other form of direct review, but a wrong, or even a correct, decision, where the court has exceeded its jurisdiction and power, is void, and may be set aside either directly or

---

4. Because *McClayton* addressed different and other issues, and its holding that the circuit court could not enter judgment on future installments is good law, we disapprove only the holding that the erroneous entry of judgment on such future installments constitutes an "irregularity" that may be corrected by the exercise of revisory powers under Rule 2–535(b).

collaterally. As expressed by *Freeman on Judgments* (5th Ed.) sec. 354, pages 734–737: "Hence though the court may have acquired the right to act in the clause and been put in possession of full jurisdiction to go ahead and dispose of the issues involved, its judgment in excess of the jurisdiction thus acquired or which transcends the judicial powers which it may rightly exercise under the law of its organization is subject to collateral attack for want or excess of jurisdiction, even though the parties may have acquiesced or consented to the exercise of the jurisdiction which the court assumed to exercise, for no act or volition of the litigants can confer a power upon the court which the law does not authorize it to exercise."

*Id.* at 80–81, 195 A. 306.

Thacker counters that "the jurisdictional holding in *Spencer v. Franks* has never again been applied by the Maryland courts to permit a collateral attack on a judicial decree after the appeal period had expired." She also asserts that it is "inconsistent with the holdings in" *Moore v. McAllister*, 216 Md. 497, 141 A.2d 176 (1958), *First Federated Commodity Trust Corp. v. Comm'r of Sec.*, 272 Md. 329, 322 A.2d 539 (1974), and *Evans v. Evans*, 75 Md.App. 364, 541 A.2d 648 (1988).

Once again, we agree with Thacker that the authority on which Hale understandably relies is of questionable precedential value in this case. *Spencer's* jurisdictional holding has not been applied outside the adoption context.[5] The Court of Appeals has never cited the quoted language from *Spencer* as authority for the proposition Hale advocates here—that courts may strike down any erroneously included term of an enrolled divorce decree at the request of a spouse who elected not to

---

5. The continuing validity of *Spencer* in the adoption context also has been called into question. *See In re Adoption No. 10087*, 324 Md. 394, 437 n. 9, 597 A.2d 456 (1991)(Eldridge, J., dissenting in part)(arguing that majority's holding that putative adoptive parents must comply with terms of uniform adoption laws permits adoption court to "go beyond the authority granted in the adoption statutes and in the rules," and in doing so, "overrules sub silentio *Spencer v. Franks* ").

challenge that term either at trial or on direct appeal. We agree with Thacker that giving *Spencer* such a broad reading would be inconsistent with more recent, and more cogent, authority holding that judgments in matters that were properly before the court, both procedurally and substantively, but which include relief that is for some reason improper, do not fall within the class of cases that may be revised under Rule 2–535(b).

We conclude that Hale's argument is premised on a misunderstanding of the type of "jurisdictional error" that justifies relief from an enrolled judgment. In *Moore,* the Court explained that the concept of "jurisdiction" has two distinct meanings.

> Juridically, jurisdiction refers to two quite distinct concepts: (i) the *power* of a court to render a valid decree, and (ii) the *propriety* of granting the relief sought. To ascertain whether a court has power, it is necessary to consult the Constitution of the State and the applicable statutes. These usually concern two aspects: (a) jurisdiction over the person—obtained by proper service of process—and (b) jurisdiction over the subject matter—the cause of action and the relief sought.

*Moore,* 216 Md. at 507, 141 A.2d 176. Only a lack of jurisdictional "power" can justify relief from the enrolled judgment. *See id.* at 507–08, 141 A.2d 176. Thus, it is this distinction between *"power"* and *"propriety"* that is critical for purposes of determining whether a court may exercise revisory powers under Rule 2–525(b).

This distinction is apparent in *First Federated,* in which the Court of Appeals affirmed the denial of a motion to vacate consent decrees challenged on the "jurisdictional" ground that the subject matter of the decrees did not involve any security. *See First Federated,* 272 Md. at 335–36, 322 A.2d 539. The Court reasoned that the attack was targeted against "the *right* of the [commissioner] to proceed with his action, which has already been finally determined by the consent decree and cannot now be questioned, not the power

of the court to hear and determine the case, which it clearly possesses." *Id.* To explain its holding, the Court explicitly adopted *Moore's* "power of the court v. propriety of relief" distinction as the test for determining whether a judgment can be revised as a result of a "jurisdictional" error.

> What is meant by the lack of jurisdiction in its fundamental sense such as to make an otherwise valid decree void is often misunderstood.... "Juridically, jurisdiction refers to two quite distinct concepts: (i) the *power* of a court to render a valid decree, and (ii) the *propriety* of granting the relief sought." *It is only when the court lacks the power to render a decree, for example because the parties are not before the court, as being improperly served with process, or because the court is without authority to pass upon the subject matter involved in the dispute, that its decree is void.* On the other hand, the question of whether it was appropriate to grant the relief merges into the final decree and cannot thereafter be successfully assailed for that reason once enrolled.... *If by that law which defines the authority of the court, a judicial body is given the power to render a judgment over that class of cases within which a particular one falls, then its action cannot be assailed for want of subject matter jurisdiction.*

*Id.* at 334–35, 322 A.2d 539 (citations omitted and emphasis added).

In *Tandra S. v. Tyrone W.*, 336 Md. 303, 648 A.2d 439 (1994), the Court examined this "power v. propriety" distinction in terms of whether there was a "mistake" within the purview of Rule 2–535(b). The Court reversed orders vacating two enrolled paternity judgments, which required the "judicially determined fathers" to pay child support, even though it was proved post-judgment that neither was a biological father.[6] *See id.* at 324, 325, 648 A.2d 439. In doing so,

---

6. In 1995, the Legislature "overturn[ed]" the result in *Tandra S. v. Tyrone W.*, 336 Md. 303, 648 A.2d 439 (1994), by enacting Maryland Code (1984, 1999 Repl.Vol.), section 5–1038 of the Family Law Article

the Court explicitly defined the type of "jurisdictional error" in which "the court has no power to enter the judgment" as a "mistake" warranting the exercise of revisory power under Rule 2–535(b). *See id.* at 317, 648 A.2d 439. But, the Court held, a mistaken adjudication of paternity is not "[t]he typical kind of mistake [that] occurs when a judgment has been entered in the absence of valid service of process," preventing the court from obtaining personal jurisdiction over a party. *See id.* Rather, when the party against whom the judgment is entered was "advised of all the safeguards the law provides to prevent incorrect decisions, and waived all those rights" by choosing to accept the judgment, there is no ground for revision under Rule 2–535. *See id.* at 324, 648 A.2d 439.

In *Davis v. Davis,* 335 Md. 699, 646 A.2d 365 (1994), the Court of Appeals rejected a challenge to the terms of a marital property award in an enrolled divorce decree. *See id.* at 722, 646 A.2d 365. Applying the "power v. propriety" distinction, the Court held that the divorce court's failure to exercise its jurisdiction within the statutorily prescribed time period did not deprive it of jurisdiction to enter the disputed marital property award, and therefore, the husband's failure to raise the issue before the trial court "preclude[d] him from attacking the marital property distribution[.]" *Id.* at 721–22, 646 A.2d 365.

Similarly, this Court has applied the "power v. propriety" test to ensure finality of an enrolled divorce judgment. As Thacker points out, in *Evans v. Evans,* 75 Md.App. 364, 541 A.2d 648 (1988), we explained why a divorce decree could not be revised under Rule 2–535(b) for "jurisdictional mistake." We find the issue, holding, and rationale in *Evans* highly applicable to the analogous circumstances of this appeal.

---

("FL"), "which allows courts to set aside paternity judgments upon discovery by blood or genetic testing that the adjudged father is excluded as the actual biological father[.]" *Walter v. Gunter,* 367 Md. 386, 399–400, 788 A.2d 609 (2002); *see* FL § 5–1038(a); 1995 Md. Laws, chap. 248.

In *Evans,* the original divorce court awarded the wife of a military veteran a portion of his military disability payment, under the mistaken belief that it was a military pension. That was error, because the United States Supreme Court previously had ruled that military disability payments could not be divided on marital property grounds. *See McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). When the husband later moved to revise the decree, the reviewing court deleted the provision. Although the reviewing court recognized that the award had been an integral "part of an entire scheme of dividing their property," nevertheless it concluded that the error in including it was a "jurisdictional matter" that could be "dealt with at any time" and could be objected to "at any point when it is enforced[.]" *Id.* at 365–66, 541 A.2d 648.

 We reversed, holding that the reviewing court did not have authority to revise the original divorce decree. *See id.* at 366–67, 541 A.2d 648. We explained that the original divorce court's impermissible inclusion of this provision in the divorce decree was not a "jurisdictional mistake," but "simply a legal mistake" or "error of law[.]" *See id.* at 367, 372, 541 A.2d 648. "The judge had the *power* to make the award of marital property; it is the propriety of a portion of his award that [the husband] seeks to challenge by collateral attack." *Id.* at 372, 541 A.2d 648. " '[W]here ... a statute authorizes a court to do a particular thing, and the power of the court to act is subject to certain limitations named, then a judgment of the court rendered contrary to the limitations named is not void for want of jurisdiction nor subject to collateral attack, but is voidable only.' " *Id.* (citation omitted). The erroneous inclusion of an impermissible term of the marital property award made the original divorce decree voidable on direct appeal, but did not make it void *ab initio* or voidable on a Rule 2–535(b) motion. *See id.* at 372–73, 541 A.2d 648. We held that Rule 2–535(b) did not permit the reviewing court to revise the enrolled divorce decree under those circumstances. *See id.* at 375, 541 A.2d 648.

The teachings of *Evans* are directly applicable to the instant case. Both cases involve appellate review of an order striking out a provision in the marital property portion of a divorce judgment. *See* FL § 8–205(a)("court may transfer ownership of an interest in a pension, . . . grant a monetary award, or both, as an adjustment of the equities and rights of the parties concerning marital property"). Although the stricken provisions involve different property (*i.e.*, military disability payments in *Evans* and a monetary award in this case), both cases turn on claims that the original divorce court erred in including the challenged provision in the divorce judgment.

 Following *Evans,* even if we assume that the erroneous inclusion of an impermissible acceleration term in the monetary award portion of the 1989 divorce judgment rendered that judgment voidable on direct appeal, nevertheless, that error was not the type of "jurisdictional mistake" that could be remedied by the exercise of revisory powers under Rule 2–535(b). It is undisputed that the original divorce court had subject matter jurisdiction to determine the amount and terms of the monetary award, and personal jurisdiction over Hale. *See* FL § 8–205(a). Thus, Hale's challenge to the 1989 divorce judgment is, like the challenge in *Evans,* merely a collateral attack on the propriety of the relief—a claim that the court exceeded certain limits governing the type of relief it could award. *See Evans,* 75 Md.App. at 372, 541 A.2d 648. Thus, whether we view Hale's challenge as an attempt to establish "mistake," "jurisdictional error," or "lack of power," it falls short of establishing that the original divorce court lacked jurisdiction to enter the 1989 divorce judgment.

We do not agree that *Spencer v. Franks* requires a different result. We find that decision and language inapposite, because, unlike the "improper relief" challenged here, that case involved a "fundamental jurisdictional mistake," in that the adoption court had no inherent, common law, or statutory authority to award visitation rights in conjunction with a final adoption decree. *See id.* at 81–84, 195 A. 306.

We look to Rule 2–535(b) as the definitive standard for exercising revisory power over enrolled judgments in civil cases. *See Eliason v. Comm'r of Pers.*, 230 Md. 56, 59, 185 A.2d 390 (1962). This rule, and the cases construing it, provide a clear and consistent basis for our decision in this case. *See Platt*, 302 Md. at 15, 485 A.2d 250.

Beyond Rule 2–535(b) and the cases construing it, we see another compelling reason to reject Hale's contention that an erroneously included provision in the marital property terms of a divorce judgment may be revised at any time. Put into practice, that theory would wreak havoc on the finality of judgments principle, which we rely on as a cornerstone of our judicial system. Such an expansive reading of Rule 2–535(b) would permit a party to a divorce judgment that contains any "erroneously included" term to obtain relief at any time, instead of being limited to a direct appeal.

If, as in both *Evans* and this case, it is clear that the challenged term was an integral part of the scheme under which the parties' marital property was divided, then a decision to strike only that particular portion of the award could significantly disrupt the scheme approved by the court. The spouse who "loses" by the deletion of a term of the martial property award in the original divorce judgment then has a legitimate counterclaim for a review of the entire award, not just the erroneously included term. That spouse, had he or she known that the challenged term would remain vulnerable to collateral attack, is likely to have asked for different relief. The original court, had it known that the challenged term could be excised from the award years after the parties began to live under it, is likely to have created a different scheme at the outset. The court certainly would have done so on remand after direct appeal.

For these reasons, allowing courts to belatedly strike out a portion of an enrolled judgment covering the division of marital property would open the floodgates of continuous litigation and uncertainty. Our finality of judgments principle, embodied in Rule 2–535, is rightly set against this prospect.

### 3.

### No Showing Of Diligence

Thacker also argues that the circuit court erred by revising the 1989 divorce judgment without making the necessary finding of "ordinary diligence." *See Weitz,* 273 Md. at 631, 331 A.2d 291. As an alternative basis for our decision, we agree.

The circuit court observed that Hale acted immediately to challenge the acceleration clause once Thacker exercised her rights under it. But that is not the relevant time period for measuring "ordinary diligence." Instead, we must ask why Hale took twelve years to mount his challenge to the acceleration clause, when the record shows that he was aware of its existence from the outset. From this perspective, we see no evidence from which we could conclude that Hale exercised the requisite level of diligence to warrant relief under Rule 2–535(b).

The record shows that the same question regarding the validity of the acceleration clause that Hale first raised in 2001 was "on the table" twelve years ago, when the parties openly accepted the acceleration provision in the 1989 divorce judgment. There was no appellate challenge to this clause by Hale. To the contrary, he actually acknowledged the validity of the acceleration clause in his pleadings regarding post-judgment motions.

As we already have pointed out, if his current objection to this clause had been litigated at that time, the original divorce court might have rendered less favorable terms on the monetary award, including a less favorable determination of the amount and payment terms. Hale cannot be permitted to profit from his lack of diligence. We have no trouble concluding that twelve years is an "extraordinarily long time" that "preclude[s] a finding of diligence" in this case. *Cf., e.g., Platt,* 302 Md. at 16–17, 485 A.2d 250 (affirming finding that five year delay in challenging a support order in a divorce decree precluded a finding of diligence); *Hughes v. Beltway Homes, Inc.,* 276 Md. 382, 389, 347 A.2d 837 (1975)(affirming trial

court's finding that six month delay in challenging judgment ratifying foreclosure sale was an "extraordinarily long time" that "precludes a finding of diligence").

## B.

### Not An Otherwise Unenforceable "Nullity"

We can quickly dispose of the circuit court's alternative holding that, regardless of whether it had revisory powers under Rule 2–535(b), it had power to delete the acceleration clause because it was an unenforceable "nullity." "Nullity" is not a separate ground for revising an enrolled judgment; Rule 2–535 provides the exclusive means for doing so. *See Andresen,* 317 Md. at 387–88, 564 A.2d 399; *Platt,* 302 Md. at 15, 485 A.2d 250; *Hughes,* 276 Md. at 385–86, 347 A.2d 837. "[T]he language of the Rule, which merely restates in substance the rule at common law, embraces all the power the courts of this State have to revise and control enrolled judgments and decrees." *Eliason,* 230 Md. at 59, 185 A.2d 390. For this reason, "a court's revisory powers do not provide for the amendment of an enrolled judgment on the ground of 'fundamental unfairness.'" *Tandra S.,* 336 Md. at 325, 648 A.2d 439; *see Platt,* 302 Md. at 14, 485 A.2d 250. To the extent that *McClayton* may be read to suggest otherwise, it is contrary to these consistent and clear directives of the Court of Appeals, and therefore, does not govern our decision in this case.

**JUDGMENT REVERSED. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**